648 So.2d 683 (1994)
Warfield Raymond WIKE, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 81117.
Supreme Court of Florida.
November 23, 1994.
Rehearing Denied June 25, 1995.
*684 Nancy A. Daniels, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Warfield Raymond Wike, Jr., appeals his sentence of death for first-degree murder imposed after a remand for a new sentencing proceeding. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We hold that the trial judge erroneously denied Wike his vested procedural right to conclude the closing arguments before the jury, and, consequently, we must reverse his sentence and remand this cause for resentencing.
Wike was convicted of first-degree murder, kidnapping, sexual battery, and attempted murder and was sentenced to death for the first-degree murder conviction.[1] On appeal, we affirmed the convictions but ordered a new sentencing proceeding. On remand, the jury unanimously recommended the death penalty, which the trial judge subsequently imposed. It is this death sentence that is now before the Court.
In this appeal, Wike raises eleven issues,[2] the first of which we find to be dispositive. In his first issue, Wike asserts that the trial judge erroneously denied him the right to final closing argument. The facts pertinent to this claim are as follows. After remand by this Court, but before the new sentencing proceeding, Wike filed a motion requesting that he be allowed to give final closing argument, i.e., that his closing argument follow the State's closing argument. In making this request, Wike's counsel relied on Florida Rule of Criminal Procedure 3.250, which governs the presentation of arguments during the guilt phase. At the hearing on Wike's motion, the trial judge asked: "Do the rules specifically address opening and closing with regard to a penalty phase?" (Emphasis added). The State responded, "It does not address that as I recall, Judge. That is 3.250, I believe." Additionally, the State informed the judge that Wike's request did "not comport *685 with the Rules of Criminal Procedure." The trial court denied Wike's motion.
Wike renewed his request for final closing argument near the close of the resentencing proceeding. At that time, the following colloquy took place:
TRIAL JUDGE: [A]gain, it does not seem to be clear law right on point. It appears to be a procedural matter.
WIKE'S COUNSEL: OK, then for the record I'll request that we be allowed rebuttal after the State.
TRIAL JUDGE: I don't know of any  The norm in the sentencing phase is argument. I'm not familiar with rebuttal... . What is the State's position?
STATE: [Rebuttal] is not justified under the cases that presently exist.
TRIAL JUDGE: I'm a little surprised there is not more guidance on this area, but there is not and it appears as though the [prior] ruling of [this] Court has logic to it.
After the jury returned its recommendation and the penalty phase proceeding had concluded, Wike's counsel, in a motion for a mistrial, brought to the attention of the trial judge and the state attorney Florida Rule of Criminal Procedure 3.780(c), which governs the presentation of arguments in penalty phase proceedings. The trial judge denied the motion for mistrial, stating:
Neither the State nor defense counsel cited [rule 3.780(c)] to the Court at the time the Pretrial Motion was argued or at the Charge Conference when the issue was again raised. This Court finds that the term "will" [within rule 3.780] is not mandatory and allows the Court discretion with regard to the order of argument.
However, even if the Court has no discretion in this case and allowing the State closing argument was error, the issue remains is it harmless error or is it fundamental error which would require a mistrial. In that this is a capital case, the rule differs from Rule 3.250, Florida Rules of Criminal Procedure which provides a Defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury.
(Emphasis added). The Defendant in the instant case did in fact offer testimony in his own behalf (other than his own) and would not have been entitled to closing argument before the jury under Rule 3.250. Additionally, the defense did not bring to the Court's attention anything argued by the State during its argument that the defense believed was necessary to rebut nor did the defense request additional or rebuttal argument subsequent to the State's closing argument. In order to assign denial of the right to a closing argument available as error, the Defendant must have tendered and been refused the right to have his counsel make a closing argument subsequent to a closing argument against him made for the prosecution. (Emphasis added). Hall v. State, [119 Fla. 38,] 160 So. 511, 512 (Fla. 1935).
In a non-capital trial, the right to open and close the argument to the jury is a substantial procedural right, but never has been raised to constitutional status. Preston v. State, 260 So.2d 501, 505 (Fla. 1972). The Supreme Court of Florida has held that the right to open and close belongs to the prosecution as the party with the burden of proof. Id. at 505.
This Court has not found any case authority holding that the right to close the argument to the jury in the penalty phase of a capital case rises to the level of a substantial procedural right where the jury returns an advisory verdict even though same must be given great weight by the sentencing Court. In the instant case, both sides had equal opportunity for argument, and altering the order of argument from Florida Rule of Criminal Procedure 3.780(c) does not appear to be fundamental error. Quince v. State, [414 So.2d 185 (Fla.), cert. denied, 459 U.S. 895, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982)].
In summary, throughout the proceedings, Wike's counsel asserted that Wike had a right to the concluding argument but did not cite rule 3.780; the State erroneously advised the trial judge that no rule of criminal procedure governed this situation; and the trial judge, after finally being advised of the correct *686 rule, found that the rule was discretionary rather than mandatory.
Rule 3.250, which governs a defendant's right to conclude final arguments in the guilt phase of a criminal trial, provides that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury." Rule 3.780, which governs a defendant's right to conclude final arguments in the penalty phase of a capital case, provides as follows: "Both the state and the defendant will be given an equal opportunity for argument, each being allowed one argument. The state will present argument first." (Emphasis added.) Both rules are clear and unambiguous  in a guilt phase proceeding, a defendant has the right to close in final argument only if the defendant presents no testimony other than his or her own; in a penalty phase proceeding of a death case, a defendant always has the right to close in final argument.
To fully understand the rights this state has historically provided to defendants regarding concluding arguments under either rule, it is necessary to examine the history of these rules. At common law, the generally accepted rule was that the party who had the burden of proof had the right to begin and conclude the argument to the jury. Huston v. Green, 91 Fla. 434, 108 So. 846 (1926). The rule applied to both civil and criminal cases. Faulk v. State, 104 So.2d 519 (Fla. 1958); Smith v. State, 155 Fla. 148, 19 So.2d 698 (1944). The rationale behind this common law rule was to provide the party who shouldered the disadvantage of the burden of proof with the advantage of the opening and closing arguments before the jury. Faulk. In 1853, this common law rule was changed in Florida through chapter 539, Laws of Florida (1853), to provide that a defendant who produced no testimony at trial was entitled to the advantage of making the concluding argument before the jury. That law was later codified as section 918.09, Florida Statutes.
As early as 1858, this Court determined that a trial judge had no discretion in following the statutory predecessor of section 918.09 and that the erroneous denial of a defendant's right to concluding argument constituted reversible error. Heffron v. State, 8 Fla. 73 (1858). Throughout the years, Florida courts have never deviated from the holding that the denial of a defendant's right to close under this rule constitutes reversible error. Faulk; Morales v. State, 609 So.2d 1242 (Fla. 3d DCA 1992); Graddy v. State, 606 So.2d 1242 (Fla. 2d DCA 1992); Lamar v. State, 583 So.2d 771 (Fla. 4th DCA 1991); Crowley v. State, 558 So.2d 529 (Fla. 4th DCA 1990); Terwilliger v. State, 535 So.2d 346 (Fla. 1st DCA 1988); Gari v. State, 364 So.2d 766 (Fla. 2d DCA 1978); Dampier v. State, 336 So.2d 683 (Fla. 2d DCA 1976); Cagnina v. State, 175 So.2d 577 (Fla. 3d DCA 1965). In fact, this is true even though in 1968 section 918.09 was incorporated as rule 3.250 and in 1970 section 918.09 was repealed. See, e.g., Wilson v. State, 284 So.2d 24 (Fla. 2d DCA 1973) (even though the opening and closing of final argument statute is now a procedural rule, the denial of that 120-year-old right still constitutes reversible error), quashed on other grounds, 294 So.2d 327 (Fla. 1974). Further, Justice Thornal made clear in Birge v. State, 92 So.2d 819 (Fla. 1957), that erroneous denial of a defendant's right to conclude the arguments is reversible error even when more than sufficient evidence exists to determine that a defendant is guilty. The Court explained in Birge that it is not this Court's privilege to disregard the right to concluding argument "even though we as individuals might feel that [a defendant] is as guilty as sin itself." 92 So.2d at 822. See also Terwilliger, 535 So.2d at 348 (the erroneous denial of a defendant's right to concluding argument constitutes reversible error, "notwithstanding that the state's evidence may be more than adequate to support a verdict of guilty"). As such, the law is clear that the erroneous denial of the right provided by rule 3.250 cannot be deemed harmless error. Morales; Hart v. State, 526 So.2d 124 (Fla. 5th DCA 1988); Gari. As the Fourth District Court of Appeal stated in Raysor v. State, 272 So.2d 867, 869 (Fla. 4th DCA 1973):
[W]e are at a loss as a practical matter to know just how any criminal defendant *687 could in fact make a demonstration of error because of the refusal of the trial court to follow the dictates of the Rule. It is inherent in the procedure, as all acquainted with trial tactics know, that the right to address the jury finally is a fundamental advantage which simply speaks for itself.
Although rule 3.250 has been in existence in some form or another for over 135 years, rule 3.780 was not enacted until 1977. Even so, rule 3.780 is not new and should be familiar to all attorneys and judges involved in death penalty proceedings. That rule was adopted as part of the bifurcated procedure established for the presentation of evidence and rebuttal testimony in the guilt and sentencing proceedings for capital cases. See rule 3.780(a), (b). Rule 3.780(c) makes it clear that a defendant always presents the final closing argument in the sentencing phase. In a capital sentencing hearing, a defendant is on trial for a determination of a life or death sentence and, in promulgating rule 3.780(c), this Court made a conscious policy decision that, under these circumstances, a defendant should have the procedural right of having the concluding argument before the jury. A trial judge has no discretion to change the order of the arguments under this rule, and there is no question but that the word "will" in rule 3.780(c) was intended to be mandatory.
Nevertheless, the State argues that, when ruling under rule 3.780(c), we need not follow the reversible error doctrine that has been established under rule 3.250. The State contends that rule 3.250 governs the guilt phase of a trial, not the penalty phase, as does rule 3.780(c), and that, because the two phase differ in many respects, so too should they differ in the application of the reversible error doctrine. Instead, the State contends that we should apply a harmless error analysis in determining whether the trial judge's error is reversible. We disagree. As we noted in Fitzpatrick v. State, 527 So.2d 809, 811 (Fla. 1988), "A high degree of certainty in procedural fairness ... must be maintained in order to insure that the death penalty is administered evenhandedly." If a defendant is not capable of demonstrating prejudice under rule 3.250, how could a defendant ever be expected to demonstrate prejudice under 3.780(c)? We find that no real difference exists in the policy of affording a defendant the right to concluding argument under either rule, and, consequently, we conclude that the failure to provide a defendant with the concluding argument under rule 3.780(c) constitutes reversible error.
The State also argues that, even if the judge's failure to provide Wike with concluding argument under rule 3.780(c) was reversible error, Wike failed to properly preserve this point for appeal given that his counsel failed to bring rule 3.780(c) to the attention of the court until after the trial. Unquestionably, if trial counsel fails to properly preserve this issue for review, the issue is procedurally barred. Quince v. State, 414 So.2d 185 (Fla.), cert. denied, 459 U.S. 895, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982); Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978); Staples v. State, 298 So.2d 545 (Fla. 2d DCA 1974). In this case, however, we find that the issue was properly preserved.[3] Wike requested that he be allowed to present the concluding argument on more than one occasion, and the State erroneously advised the trial judge that no rule governed Wike's request. Moreover, we find it amazing that Wike's counsel, the prosecutor, and the trial judge were all unfamiliar with rule 3.780, a seventeen-year-old rule of criminal procedure expressly written to control the penalty phase proceedings in capital cases.
Accordingly, because the trial judge erroneously denied Wike his vested procedural right to conclude the closing arguments before the jury, we find that we must reverse his sentence and again remand this cause for resentencing.
It is so ordered.
*688 OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, C.J., dissents with an opinion, in which WELLS, J., concurs.
WELLS, J., dissents with an opinion, in which GRIMES, C.J., concurs.
ANSTEAD, Justice, specially concurring.
I agree with the majority opinion that there is no rational basis for drawing a distinction between the penalty and guilt phases of a capital homicide prosecution for purposes of enforcing this Court's rule mandating that the defendant have the final closing argument to the jury. Indeed, since the defendant's life is literally on the line during the penalty phase, any arguable distinction would favor an even more stringent application of the rule in the penalty phase. Because the defendant's life is substantially in the hands of the jury, his very existence is at stake during the penalty phase, and the denial of the rule-mandated right to closing is clearly more prejudicial to him than the right to closing during the guilt phase.
Final argument is an important component of our adversarial and largely procedural system of justice, and of its centerpiece, trial by jury. Our system contrasts with the inquisitorial system used in many countries, and its reliance upon the court to investigate, produce, and assess evidence. Under our system, we place great reliance upon the litigants to convince the fact finder, usually a jury, by the production of evidence and by oral persuasion, of the justice of their positions. Under this system, and in reality, it does matter who gets the last opportunity to address the jury. This court has long recognized the importance of final argument, and, by adopting a rule that grants the last argument to the convicted defendant whose life is at stake, has enhanced the credibility of the sentencing phase of a capital trial, clearly the most important trial proceeding in our justice system.
There is also no legal justification or factual basis for applying a harmless error test here. The majority has cited a lengthy and unbroken line of cases enforcing this rule and requiring a new trial when the rule is violated. Given our responsibility of review, we are, unfortunately, often called upon to distinguish among the most extreme cases of human depravity. The facts of this case, involving the murder and rape of a young child, strain this Court's ability to comprehend the source of such inhumane conduct. Under such circumstances it may be tempting to throw up one's hands and simply say this case is so bad that no error could have made a difference. Indeed, it could be contended that no penalty phase trial is necessary in such a case and that no juror could possibly vote to spare the life of someone guilty of such depravity.
We, of course, cannot give in to such temptations. In fact, in this defendant's first trial, three (3) of the same jurors who found him guilty of murder and rape also recommended that his life be spared. They were influenced, perhaps, by the mitigating evidence summarized in our earlier opinion, including the defendant's drug abuse and lack of a significant criminal history. More importantly, the constitutional validity and legitimacy of the capital trial and sentencing process rests substantially upon this Court's acceptance and adherence to its responsibility to see that the carefully crafted rules of the process are stringently enforced. In this unique area especially, the more stringently we enforce the rules laid down by this Court and the United States Supreme Court, the more confidence there will be in the legitimacy of the process and the justice of the outcome. We bear an enormous burden and bear it we must.
This Court has displayed no timidity in applying the doctrine of harmless error in capital cases. Indeed, any review of this Court's recent opinions in capital cases will yield a liberal seasoning of citations to State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), this Court's definitive opinion on the harmless error rule. We have also upheld many rules, arguably less important than the one invoked today, and rejected as a matter of policy any consideration of harmless error in their application. In Richardson v. State, 246 So.2d 771 *689 (Fla. 1971), we announced a requirement of a procedure that must be followed when the discovery rules have been violated, and we have consistently held that the failure to follow that procedure will result in a reversal and retrial regardless of whether it can be shown that the error was harmless. Further, we have consistently adhered to the rule that in a homicide prosecution the failure to instruct on justifiable and excusable homicide as part of the definition of manslaughter is fundamental error regardless of the lack of objection and not subject to a harmless error analysis. See Miller v. State, 573 So.2d 337 (Fla. 1991); Rojas v. State, 552 So.2d 914 (Fla. 1989); Hedges v. State, 172 So.2d 824 (Fla. 1965). These are but two examples of legal principles we have found too important to the process to permit a harmless error analysis.
The facts of this case are among the most egregious we have seen. Arguably, for that very reason, the life of the defendant may rest entirely on the ability of his representative at trial, his lawyer, to convince a jury to show him mercy and recommend that his life be spared. In a similar context involving a different sentencing error, Justice Sundberg succinctly made the point:
Would the result of the weighing process by both the jury and the judge have been different had the impermissible aggravating factor not been present? We cannot know. Since we cannot know and since a man's life is at stake, we are compelled to return this case to the trial court for a new sentencing trial. .. .
Elledge v. State, 346 So.2d 998, 1003 (Fla. 1977).
OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, Chief Justice, dissenting.
Because guilt-phase proceedings are ordinarily much longer and more complicated than penalty-phase proceedings, there is a difference between the two with respect to the importance of the order of closing arguments. Therefore, I see no departure from stare decisis in employing a harmless error analysis in this case.
WELLS, J., concurs.
WELLS, Justice, dissenting.
I dissent. I have carefully reviewed the trial record, including the closing argument of counsel, and conclude that the order of counsel's argument had absolutely no effect  none  on the jury's recommendation that a sentence of death be imposed upon Warfield Raymond Wike, Jr. In my opinion, a harmless error review can and should be performed with respect to the present record in accordance with State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), and Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). A harmless error review of this record demonstrates beyond and to the exclusion of every reasonable doubt that the "Order of Sentence and Findings of Fact Supporting the Imposition of Death Sentence" should be affirmed.
This Court has in the past accepted the exceptional responsibility of applying harmless error analysis to many issues in the sentencing phase of a death case. See Fennie v. State, 648 So.2d 95 (Fla. 1994) (applying harmless error analysis where trial court provided an unconstitutionally vague jury instruction for the cold, calculated, and premeditated aggravating factor); Peterka v. State, 640 So.2d 59 (Fla. 1994) (applying harmless error analysis where trial court permitted testimony regarding an unverified prior juvenile conviction during the penalty phase); Atwater v. State, 626 So.2d 1325 (Fla. 1993) (finding that errors in allowing evidence of lack of remorse during penalty phase and giving of erroneous instruction for the heinous, atrocious, or cruel aggravator were harmless), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); Duncan v. State, 619 So.2d 279 (Fla. 1993) (finding that introduction of gruesome photograph during penalty phase was harmless error although the prejudicial effect of the photograph outweighed its probative value), cert. denied, ___ U.S. ___, 114 S.Ct. 453, 126 L.Ed.2d 385 (1993); Clark v. State, 613 So.2d 412 (Fla. 1992) (applying harmless error analysis where trial court might have erroneously *690 considered the felony murder and pecuniary gain aggravators separately), cert. denied, ___ U.S. ___, 114 S.Ct. 114, 126 L.Ed.2d 79 (1993); Randolph v. State, 562 So.2d 331 (Fla. 1990) (finding that improper questioning of medical examiner during penalty phase constituted harmless error), cert. denied, 498 U.S. 992, 111 S.Ct. 538, 112 L.Ed.2d 548 (1990); Chandler v. State, 534 So.2d 701 (Fla. 1988) (applying harmless error review to prosecutor's penalty phase comment on defendant's silence), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989); Hardwick v. State, 521 So.2d 1071 (Fla. 1988) (finding error in weighing aggravating and mitigating factors harmless), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988); Delap v. Dugger, 513 So.2d 659 (Fla. 1987) (applying harmless error review where trial court failed to instruct jury that it could consider nonstatutory mitigating factors). The instant case illustrates why harmless error review should apply to procedural errors in the penalty phase in a death case.
This tragedy began in early morning hours of September 22, 1988, when Wike kidnapped sisters Sarah Rivozfar, age 6, and Sayeh Rivozfar, age 8, from their home while they were sleeping. Wike drove the two young girls to a place on an unpaved road and then had Sayeh climb onto the trunk of the car. He removed her pants and underwear and raped her. Next, Wike took the girls into an area near a tree. He then slit Sayeh's throat with a knife, and she fell to the ground as if dead. As Sayeh lay on the ground, she heard her six-year-old sister screaming. When Wike finally left the scene, Sayeh found Sarah dead. Wike had slit Sarah's throat. Sayeh managed to make her way to a road, where she was rescued by a couple on their way to work.
Wike was arrested the morning of the murder, rape, and kidnappings. In June 1989, he was tried before a jury in Santa Rosa County. The jury recommended a sentence of death by a vote of nine to three. The trial judge followed the jury's recommendation and imposed a sentence of death. In its review, this Court reversed the trial court's judgment on the ground that the trial court abused its discretion in failing to grant Wike's motion for a continuance of the penalty phase. Wike had moved for a one-week continuance for the purpose of procuring additional witnesses, e.g., Wike's mother, a cousin, and Wike's ex-wife, all of whom needed an extra week to be present to testify. Wike v. State, 596 So.2d 1020 (Fla. 1992).
In December 1992, a retrial of the penalty phase was held before a second jury in Santa Rosa County. In this second penalty proceeding, the prosecutor gave an opening statement and set forth the facts upon which the jury would make its recommendation. Wike's counsel then made an opening statement, stating that the facts as outlined in the prosecutor's opening statement were basically correct. The prosecution then introduced a number of witnesses.
Sayeh Rivozfar, who was by then 13, recounted to the jury the unfathomable nightmare she experienced on September 22, 1988. She explained to the jury how she was taken with her sister from her bed during the night, raped, and had her throat slit. She recalled hearing the screams of her sister, which she later discovered occurred as Wike slit her sister's throat. Photos of Sarah with her throat slit were admitted into evidence.
Dr. Lula Montes, a pediatrician, testified that she examined Sayeh Rivozfar on September 22, 1988, at the Santa Rosa County Medical Center. Dr. Montes asked Sayeh what had happened to her, and Sayeh responded that Ray cut her throat, that he cut her sister's throat, and that "Ray put his thing in mine," pointing to her vagina. Dr. Montes testified Sayeh had an eight centimeter clean cut laceration on the front of her neck, that she was actually bleeding from her vagina, and had a deep, extensive laceration of her vaginal canal down to her rectal sphincter.
Several witnesses testified in Wike's behalf. Wike's witnesses testified about his childhood and his history of alcohol and drug abuse. An expert presented evidence regarding the advantages of a sentence of life imprisonment as opposed to the death penalty.
*691 In their closings, both Wike's counsel and the prosecutor argued substantially the same facts which had been the basis for their opening statements. The jury returned after an hour and twenty minutes of deliberation with a unanimous recommendation of death, and the trial court followed the jury's recommendation. Wike's attorney then filed a motion for mistrial, alleging that Wike had a right to the concluding argument in the penalty phase pursuant to Florida Rule of Criminal Procedure 3.780(c). The trial judge denied the motion because neither party had cited to rule 3.780(c) when the issue regarding the order of closing arguments was originally raised and because he determined the rule was discretionary rather than mandatory.
In this court's present review, the majority relies upon the seminal case of Birge v. State, 92 So.2d 819 (Fla. 1957), to hold that the trial court's failure to give Wike the final closing pursuant to rule 3.780(c) requires reversal. The majority rejects a harmless error review because it concludes that Birge and its progeny hold that this type of error is per se reversible.
It is my view, however, that Birge and the cases which follow it are distinguishable from the instant case for several reasons. First, all of the cases on which the majority relies deal with the issue of guilt. In this case, however, guilt has already been decided, and the only issue remaining is whether the death penalty should be imposed. Because the penalty phase differs from the guilt phase, the procedures followed in each may also differ. See Hildwin v. State, 531 So.2d 124 (Fla. 1988) (recognizing a different standard for judging the admissibility and relevance of evidence in the penalty phase than in the guilt phase), affirmed on other grounds, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).
Furthermore, the Birge case was decided on the basis of section 918.09, Florida Statutes, which was repealed in 1971. Section 918.09 provided that a defendant was entitled to the closing argument in the guilt phase only when the defendant offered no testimony in his own behalf other than his own. Florida Rule of Criminal Procedure 3.250, pertaining to the guilt phase, contains this same provision, but there is no similar qualification regarding defendant's testimony in rule 3.780(c). Accordingly, I disagree with the majority's finding that "no real difference exists in the policy of affording a defendant the right to concluding argument" under rule 3.780(c) and rule 3.250.
The Birge court determined that section 918.09 gave the defendant a vested statutory procedural right to give the last argument. The statute that presently pertains to capital sentencing does not mandate that the defendant has a vested right to give the last argument. Section 921.141(1), Florida Statutes (1993), only provides that "[t]he State and the defendant or his counsel shall be permitted to present argument for or against a sentence of death." Rule 3.780(c) was designed to comport with this statute and should not be raised to the level of a substantive right which outweighs the statutory mandate.
Rather, section 924.33, Florida Statutes (1993), which codifies the harmless error rule, should apply to an error in the order of argument in the sentencing phase of a capital case. Section 924.33 specifies that "[n]o judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant." As noted herein, this Court has in fact performed harmless error review with respect to a myriad of penalty-phase issues. The United States Supreme Court in Sochor v. Florida, 504 U.S. at ___, 112 S.Ct. at 2119, expressly recognized that this Court could perform a harmless error review of the penalty phase of a capital case which was tried in the Florida courts. In Sochor, the court reviewed an erroneous jury instruction. It is simply illogical to conclude that this court can perform a harmless error review where the jury has been instructed erroneously by the court as to what the law is, but cannot perform a harmless error review when the order in which counsel argues to the jury is erroneous.
The majority, in expressing concern over the defendant's inability to demonstrate prejudice *692 under 3.780(c) if a harmless error analysis is applied, overlooks the fact that it is the State which bears the burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict. The State, not Wike, must prove that there is no reasonable possibility that the trial court's failure to give Wike the final closing argument in the penalty proceeding contributed to his conviction.
In the instant case, the heavy burden placed upon the State is clearly met. The record demonstrates that the order of counsel's argument could not possibly have affected the jury's decision. It is inconceivable that a majority of 12 reasonable jurors in Santa Rosa County would vote other than to impose a death sentence in this case. I therefore find the majority's decision to send the case back for a third time and have yet another jury sit through a penalty proceeding patently is unwarranted. This reversal will require Sayeh Rivozfar to relive her horrifying experience in yet another retrial. Such a retrial, based solely on technical adherence to a court rule and a 37-year-old case, serves form rather than justice. Chief Justice Rehnquist's statement in Payne v. Tennessee, 501 U.S. 808, 827-28, 111 S.Ct. 2597, 2609-11, 115 L.Ed.2d 720 (1991) should be noted in this situation:
Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." Smith v. Allwright, 321 U.S. 649, 665, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944). Stare decisis is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." Helvering v. Hallock, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940).
(Emphasis added.)
Ultimately, death penalty jurisprudence is an effort to make certain that the accused's constitutional rights guaranteed by the United States and Florida Constitutions are not abridged. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). A reading of the record in this case and the decision in Wike demonstrates beyond and to the exclusion of every reasonable doubt that Warfield Raymond Wike's constitutional rights have not been abridged, that he has been adjudicated guilty, that he has been sentenced in accord with due process, and that the sentence of death is in accord with the laws of Florida.
GRIMES, C.J., concurs.
NOTES
[1] The facts of this case are set forth in Wike v. State, 596 So.2d 1020 (Fla. 1992).
[2] Wike asserts that: (1) the trial judge erred in denying him final closing argument; (2) he was denied effective assistance of counsel; (3) the trial judge erred in allowing the State to make a "mercy" argument; (4) the trial judge failed to make an adequate inquiry as to whether Wike knowingly, voluntarily, and intelligently wanted to represent himself; (5) the trial judge improperly admitted victim impact evidence; (6) the trial judge improperly refused to permit Wike to question the jury about or present evidence of the other sentences he received in connection with this crime; (7) the trial judge gave improper jury instructions on the aggravating circumstances; (8) the trial judge erred in refusing to instruct the jury on the mitigating circumstance of extreme mental or emotional disturbance; (9) the trial judge improperly limited the testimony of a defense expert; (10) the trial judge erred in admitting evidence of the surviving sister's injuries; and (11) the trial judge improperly admitted the videotaped testimony of a state witness.
[3] In his order denying Wike's motion for mistrial, the trial judge stated that Wike had to object after the close of the State's argument for the issue to be properly preserved, citing Hall v. State, 119 Fla. 38, 160 So. 511 (1935). Notably, in Green v. State, 80 So.2d 676 (Fla. 1955), this Court stated that the ruling in Hall did not apply to a situation where, as here, the court had previously made a specific ruling on the question.