698 So.2d 817 (1997)
Warfield Raymond WIKE, Jr., Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 86537.
Supreme Court of Florida.
July 17, 1997.
Rehearing Denied September 2, 1997.
*818 Nancy A. Daniels, Public Defender and Chet Kaufman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee/Cross-Appellant.
PER CURIAM.
We have before us an appeal of a trial court's judgment imposing a sentence of death upon Warfield Raymond Wike and a related cross-appeal filed by the State. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the sentence.
Wike was convicted of two counts of kidnapping and one count each of attempted first-degree murder, first-degree murder, and sexual battery. He was sentenced to twenty-two years' imprisonment for the kidnapping and attempted first-degree murder convictions and to life imprisonment without possibility of parole for the sexual battery, each to run concurrently. He was sentenced to death for the first-degree murder charge. All but the death sentence were upheld on appeal in Wike v. State, 596 So.2d 1020 (Fla. 1992). In that case, this Court reversed the sentence of death and remanded the case for a new penalty-phase proceeding based on the trial judge's failure to grant a continuance to allow Wike to obtain the presence of witnesses for mitigation. After remand, Wike again received the death penalty, but that sentence was also reversed based on the trial judge's failure to follow the rule regarding order of argument. See Wike v. State, 648 So.2d 683 (Fla.1994). On remand, Wike was once again sentenced to death. It is this third death sentence that is the subject of this appeal.
In this resentencing proceeding, the following evidence was presented to familiarize the jury with the facts of Wike's underlying convictions in this case. Patricia Rivazfar lived in Escambia County, Florida, with her son, Arash, age four, and two daughters, Sayeh, age eight, and Sara, age six. On September 22, 1988, Wike, who was an ex-boyfriend of Patricia's, forcibly entered the Rivazfar home and kidnapped Sayeh and Sara while they were asleep. Patricia, who was asleep in another room, was unaware of the intrusion and kidnapping. Wike drove the girls to a remote location in Santa Rosa County. He bound Sara's hands behind her with tape. He removed Sayeh from the car and sexually battered her on the hood of his *819 car. Subsequently, he took the children deeper into the woods. He told Sayeh to "say a prayer," after which he slit her throat with a knife, stabbed her in the throat one time, and allowed her to fall to the ground. During this time, Sara's hands were still bound behind her and Sayeh could hear her crying and screaming. Wike then slit Sara's throat multiple times, which resulted in her death. Sayeh managed to walk out of the woods and a couple found her.
As a result of information Sayeh provided to law enforcement officials and other physical evidence connecting Wike to the crimes, Wike was arrested, indicted, and convicted of the charges set forth above.
Evidence was also submitted to establish that Wike was convicted of robbery in 1974. The trial judge refused to allow the State to present testimony from the victim's parents, finding such victim impact evidence to be too prejudicial.
In his defense, Wike presented a number of witnesses to testify that he had a difficult childhood and lost his father at a young age; that he did not present a future danger to society in prison; and that he drank and used marijuana and had done so on the night of the murder. Wike himself testified that he was innocent.
At one point in this penalty-phase proceeding, Wike struck one of his attorneys, for which he was held in contempt. The attorney moved to withdraw and moved for a mistrial. The trial judge denied both motions and gave a curative instruction to the jury.
The jury unanimously recommended that Wike be sentenced to death. In following that recommendation, the trial judge found four aggravating circumstances: prior violent felonies (1974 robbery, and contemporaneous attempted murder, kidnapping, and sexual battery of Sayeh); committed to avoid arrest; heinous, atrocious, or cruel (HAC); and cold, calculated, and premeditated (CCP). Additionally, the judge gave little or no weight to the statutory mitigating circumstance of age (Wike was 32 at the time of the murder). He also considered a number of nonstatutory mitigating circumstances.[1]
In this appeal, Wike raises four issues. In the first issue, he contends that the trial judge erroneously refused to allow Wike's counsel to withdraw after Wike struck his counsel in open court. Before the penalty-phase proceeding, Wike filed a pro se motion to be co-counsel and a motion to discharge the public defender. The trial judge denied the motions, finding that Wike was not receiving ineffective assistance of counsel. During this penalty-phase proceeding, Wike was represented by two attorneys, B.B. Boles and Henry Barksdale. On the first day of the penalty-phase proceeding, Wike renewed his complaints, contending that his attorneys would not ask the questions he wanted or conduct the proceedings as he wanted. Again, the judge found no basis to discharge counsel and advised Wike of his right to self-representation, which Wike declined. Two days into the penalty-phase proceeding and just after Wike's witness testified that he posed no future danger to society, Wike struck defense counsel Boles. The trial judge immediately removed the jury and held Wike in contempt.
After he was struck, Boles moved to withdraw, stating that he could not ethically continue to represent someone under these circumstances. He additionally noted that Barksdale could not continue alone because Boles was the attorney who was to handle the evidence in mitigation, which was just beginning. He also moved for a mistrial and moved to individually voir dire the jurors. The judge denied the motions, finding that "it would be a manifest miscarriage of justice to the victims and the citizens of this community *820 to declare a mistrial under the circumstances herein when the circumstances have been created by the defendant himself." The trial judge also again found that counsel was not ineffective. The judge then gave a curative instruction to the jury.
Wike argues that the failure of the trial judge to grant Boles' motion to withdraw deprived him of a fair penalty-phase proceeding. We disagree. During the first day of trial, defense counsel indicated that Wike wanted to address the court and counsel indicated his concern that Wike would "engage in a courtroom demonstration." On inquiry, the court found that Wike was upset because his attorneys were not asking the questions he wanted. After finding that Wike's counsel were not ineffective, the trial judge cautioned Wike against any outburst. Subsequently, defense counsel objected to filming equipment that was brought into the courtroom. The trial judge explained that filming would occur only in the event Wike "acted out." Thereafter, Wike struck his attorney. In holding Wike in contempt, the trial judge noted that Wike had been warned twice not to disrupt the proceedings. After having a chance to think things over, Wike stated that he wanted to discharge his attorneys but did not want to represent himself. The court refused to dismiss counsel.
During Wike's subsequent testimony, he stated that he had attacked Boles because he was under a lot of stress and was lashing out because he "was not being ... represented." He also stated that "I wasn't trying to accomplish anything except to get rid of the public defender's office."
Under these circumstances, we conclude that the trial judge did not abuse his discretion in refusing to dismiss Boles as Wike's counsel. First, the trial judge determined on a number of occasions throughout these proceedings that Wike was being competently represented. Further, Wike specifically stated that he did not want to represent himself. We have repeatedly concluded that there is no constitutional right for a defendant to choose a particular court-appointed counsel. Spaziano v. State, 660 So.2d 1363, 1370 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 722, 133 L.Ed.2d 674 (1996); Jones v. State, 612 So.2d 1370 (Fla.1992); Hardwick v. State, 521 So.2d 1071 (Fla.1988). Moreover, a defendant's right to conflict-free counsel cannot be used as a device to abuse the dignity of the court or to frustrate orderly proceedings. Cf. Jones v. State, 449 So.2d 253 (Fla.1984)(neither exercise of right to self-representation nor to appointed counsel may be used as device to abuse dignity of court or to frustrate orderly proceedings). As this Court stated in Waterhouse v. State, 596 So.2d 1008 (Fla.1992), when conflict between a defendant and the defendant's counsel is attributable solely to the defendant's own contumacious behavior and not to any competing interest of counsel, a defendant has not been denied the right to counsel due to such conflict of interest. In a somewhat analogous situation, the United States Supreme Court aptly made the following observation:
[O]ur courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal judicial systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality, and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But, if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the Illinois trial judge in this case.
Illinois v. Allen, 397 U.S. 337, 346-47, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970)(evaluating whether trial judge erred in removing defendant from courtroom due to disruptive behavior)(emphasis added). To allow Wike to procure new counsel and a fourth sentencing *821 proceeding based on his own misconduct during trial after he already had been warned about his behavior and after the trial judge repeatedly had determined that his counsel was effective would indeed make a mockery of the judicial system and allow Wike indefinitely to avoid a proper sentencing proceeding.
In his second claim, Wike contends that the details of the crimes committed upon the victim's sister prejudiced the outcome of this penalty-phase proceeding. According to Wike, much of the testimony regarding those details was unnecessary to establish the aggravating circumstances at issue; and the introduction of this cumulative, prejudicial evidence deprived Wike of a fair penalty-phase proceeding.
Because this was a resentencing proceeding, the jury initially knew nothing about the facts of this case. The basic premise of sentencing procedure is that the sentencer is to consider all relevant evidence regarding the nature of the crime and the character of the defendant to determine appropriate punishment. Preston v. State, 607 So.2d 404 (Fla.1992). This can be accomplished only by allowing a resentencing to proceed in every respect as an entirely new proceeding. Id.; see, e.g., Bonifay v. State, 680 So.2d 413 (Fla.1996)(evidence that victim begged for his life relevant to explain to jury the factual circumstances surrounding this murder; within sound discretion of trial court during resentencing proceedings to allow jury to hear probative evidence that will aid in understanding facts of case); Teffeteller v. State, 495 So.2d 744 (Fla.1986). As in Bonifay and Teffeteller, the evidence introduced in this case was not used to relitigate the issue of Wike's guilt, but was used to familiarize the jury with the underlying facts of the case. As we noted in Teffeteller, had this jury been the same panel that originally determined Wike's guilt, it would have been allowed to hear this evidence. Under section 921.141(1), Florida Statutes (1993), in a capital sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime. Thus, the test for admission of the evidence is relevancy as to the "nature of the crime" and not just as to whether the evidence was admissible to prove any aggravating or mitigating factor. Teffeteller. In this case, it would have been impossible to present the victim's murder in a vacuum given the circumstances of the contemporaneous crimes committed against both the victim and her sister. We find no error in the admission of the testimony regarding the victim's sister.[2]
Next, Wike asserts that the jury instructions provided regarding the aggravating circumstances of CCP, HAC, prior violent felony, and committed to avoid arrest were inadequate. Specifically, he claims that: (1) the instruction on CCP did not adequately define heightened premeditation; (2) the instruction on HAC was vague and the trial judge erroneously read the instruction using an or rather than an and in instructing that the crime must have been "pitiless and was unnecessarily torturous"; (3) the instruction on prior violent felony failed to inform the jury that it should consider the four prior violent felonies as one aggravating circumstance; (4) the committed-to-avoid-arrest instruction gave no guidance to the jury; and (5) no instruction was given regarding the prohibition against doubling CCP and committed to avoid arrest. We reject each of these assertions.
First, the majority of these claims were not properly preserved for review. Moreover, even were we to conclude that the claims had been properly preserved, we would find each to be without merit. Counsel agreed to the instruction given on CCP, and the instruction given specifically provided that "`premeditated' means the defendant exhibited a higher degree of premeditation than that which is normally required in a *822 premeditated murder." The HAC instruction given was the instruction we approved in Hall v. State, 614 So.2d 473 (Fla.1993). That the judge erroneously used an "or" where an "and" was required does not constitute fundamental error in a case such as this where the jury was provided with a written copy of the instructions. Rhodes v. State, 638 So.2d 920 (Fla.1994). The requested doubling instruction on the prior violent felony aggravating factor was unnecessary because the prior violent felony instruction provides that it is to be considered as one factor. This Court has previously rejected the contention that the instruction given on the committed-to-avoid-arrest aggravating factor is unconstitutionally vague. Whitton v. State, 649 So.2d 861, 867 n. 10 (Fla.1994)("The avoiding arrest factor, unlike the heinous, atrocious, or cruel factor, does not contain terms so vague as to leave the jury without sufficient guidance for determining the absence or presence of the factor."). Finally, no instruction on the doubling of CCP and avoid-arrest was requested, and, as set forth in the next claim, we conclude that the finding of these two aggravating circumstances was not error under the facts of this case.
In his final claim, Wike contends that the trial judge improperly found both CCP and committed-to-avoid-arrest because he relied on the same facts to support both aggravating circumstances. Further, he asserts that the conclusions relied on by the trial judge in finding the committed-to-avoid-arrest aggravator were speculative and insufficient to establish that factor. Wike also argues that the trial judge's findings in mitigation were ambiguous. In finding that the murder was committed to avoid arrest, the trial judge stated:
The capital felony was committed for the purpose of avoiding or preventing a lawful arrest. Section 921.141(5)(e). This court is well aware that an intent to avoid arrest is not present, at least when the victim is not a law enforcement officer, unless it is clearly shown that the dominant or only motive for the murder was the elimination of witnesses. Menendez v. State, 368 So.2d 1278 (Fla.1979). However, this aggravating circumstance has been applied in cases where the victim is not a law enforcement officer where it was clearly shown that the dominant or only motive for the murder was the elimination of witnesses. Riley v. State, 366 So.2d 19 (Fla. 1978). This factor may be proved by circumstantial evidence from which the motive for the murder may be inferred without direct evidence of the offender's thought processes. Preston v. State, 607 So.2d [404] 4904 (Fla.1992); Swafford v. State, 533 So.2d 270 (Fla.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). Evidence that a victim knew the Defendant and could later identify him is sufficient to prove this aggravating circumstance. Correll v. State, 523 So.2d 562 (Fla.1988); Welty v. State, 402 So.2d 1159 (Fla.1981).
In the instant case, the evidence presented to the new jury was that the victims knew the defendant as a friend of their mother, could identify him and knew him by his name, Ray. The evidence clearly established that the defendant kidnapped both girls from their home, transported them to a remote, rural area of Santa Rosa County, sexually battered Sayeh Rivazfar, attempted to kill her and that Sara Rivazfar while bound by tape witnessed the defendant's attempt to kill her sister. The defendant slashed both of the girls throats several times in an attempt to eliminate Sayeh Rivazfar as a witness to the kidnapping and sexual battery and Sara Rivazfar as a witness to the kidnapping, sexual battery and attempted murder of her sister. The girls throats were not slashed in the same location where the sexual battery took place, but they were walked into a thick pine forest where the murder and attempted murder took place and where the defendant left them for dead. All of these circumstances taken together clearly establish that the motive of the defendant was the witness elimination for the purpose of avoiding or preventing his lawful arrest. Preston v. State, 607 So.2d 404, 409 (Fla.1992).
As to the aggravating circumstance of CCP, the trial judge found:

*823 The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. Section 921.141(5)(i). As defense counsel pointed out in his sentencing memorandum, the court in its previous sentencing order was of the opinion that the evidence did not reach the heightened level of premeditation necessary to support this aggravating circumstance relying upon Power v. State, 605 So.2d 856 (Fla.1992). After reconsidering the evidence in the instant case, the court is of the opinion that the state has in fact proved this aggravating circumstance beyond a reasonable doubt. If the defendant's intent was merely to kidnap the minor victims, or even to sexually batter both of said victims, he could have done so and then left the children in an area where they would have easily been found. Instead, the defendant kidnapped the children from their home, drove across a county line into a rural and heavily wooded area. He sexually battered Sayeh after binding the decedent's hands with tape and even then did not allow the children to go free but continued into even a deeper pine thicket area where he had the children exit the car and march into the woods where the murder of the victim took place. A totality of the circumstances can be sufficient to support this aggravating factor. Hall v. State, 614 So.2d 473, 478 (Fla.1993). This court finds that the totality of the circumstances surrounding the death of Sara Rivazfar show that her murder was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
We find that the trial judge appropriately found both the CCP and committed-to-avoid-arrest aggravators. The only logical inference from these facts is that Wike killed the victim to eliminate her as a witness. See, e.g., Correll v. State, 523 So.2d 562 (Fla.1988). Further, the facts supporting the avoid arrest factor focused on the motive of the crime, whereas the facts supporting the CCP factor focused on the manner of the crime. See Stein v. State, 632 So.2d 1361 (Fla.1994).
We also disagree with Wike's contention that the trial judge's review of the mitigating circumstances was ambiguous. In actuality, the trial judge articulately set forth and discussed three statutory mitigating circumstances and twenty nonstatutory mitigating circumstances, rejecting some due to lack of evidence and determining what weight was to be given to others.
Finally, we summarily reject the State's cross-appeal, which asserts that the trial judge abused his discretion in declining to permit the introduction of victim impact evidence, given that the State failed to preserve the issue for review.
Accordingly, we affirm Wike's sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The nonstatutory mitigating circumstances considered by the trial judge are as follows: Troubled childhood (little weight), mental and emotional disturbance due to father's death and troubled life (little weight), history of alcohol and drug abuse (some weight), under the influence of drugs and alcohol at time of crime (little weight because not corroborated by witnesses who observed Wike just after the crime), gainfully employed (little weight), serving life for sexual battery of Sayeh and able to serve life for this crime (some weight), has behaved well in prison and not likely to be dangerous in the future (little or no weight), and Wike has maintained his innocence (little or no weight).
[2] This case is distinguishable from our decision in Hitchcock v. State, 673 So.2d 859 (Fla.1996), wherein we held that the trial judge committed reversible error in allowing testimony regarding crimes against the victim's sister. In Hitchcock, the testimony regarding the victim's sister was not admitted to relate the underlying facts of the case at issue or to establish the asserted aggravating circumstances; instead, the evidence was admitted based on the erroneous conclusion that the defense had opened the door to the admission of this irrelevant, highly prejudicial evidence, which subsequently became the feature of the trial. That is not the case before us today.