985 So.2d 985 (2008)
STATE of Florida, Petitioner,
v.
Ransom Louis COLLINS, Respondent.
No. SC05-108.
Supreme Court of Florida.
June 5, 2008.
*986 Bill McCollum, Attorney General, Tallahassee, Florida, and Robert J. Krauss, Assistant Attorney General, Bureau Chief, and Ronald Napolitano, Assistant Attorney General, Tampa, FL, for Petitioner.
James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, FL, for Respondent.
CANTERO, J.
We must decide whether, when a criminal sentence is reversed on appeal because of insufficient evidence of the defendant's habitual offender status, upon remand for resentencing the State may present new evidence on that issue. We review Collins v. State, 893 So.2d 592 (Fla. 2d DCA 2004), in which the Second District Court of Appeal held that the State could not present new evidence on remand. It certified conflict with several decisions from other districts: Wilson v. State, 830 So.2d 244 (Fla. 4th DCA 2002); Cameron v. State, 807 So.2d 746 (Fla. 4th DCA 2002); Morss v. State, 795 So.2d 262 (Fla. 5th DCA 2001); Roberts v. State, 776 So.2d 1034 (Fla. 4th DCA 2001); Rhodes v. State, 704 So.2d 1080 (Fla. 1st DCA 1997); and Brown v. State, 701 So.2d 410 (Fla. 1st DCA 1997). We have jurisdiction to resolve the certified conflict. See art. V, § 3(b)(4), Fla. Const. We hold that the State may indeed present additional evidence on remand. Below we discuss the conflict in the district courts and then explain our holding.

I. THE DECISIONS IN CONFLICT
The respondent, Ransom Louis Collins, pled no contest to robbery. The State sought to sentence him as a habitual felony offender. To that end, at sentencing it presented evidence of several previous felony convictions. Defense counsel argued, however, that the evidence failed to demonstrate that his prior convictions were "separately sentenced," as the habitual offender statute, section 775.084(5), Florida Statutes (2001), requires.[1] The trial court *987 overruled the objection and sentenced Collins as a habitual felony offender to twenty years in prison.
On appeal, the Second District reversed the sentence because the State presented insufficient evidence establishing the predicate convictions. As the court noted:
[T]he State concedes that the documents presented to the trial court failed to preclude the possibility that all of Collins's prior felony offenses were originally sentenced on the same date. Although the record contains evidence that Collins has been convicted of a number of felonies, many of the documents used as evidence of convictions were in fact orders that revoked probation. The orders revoking probation do not disclose when Collins was originally sentenced to probation, only the date of revocation.... The State concedes that where probation was imposed and subsequently revoked with the imposition of a prison sentence, the date of the original imposition of probation is the date that must be used in determining whether the offense was separately sentenced under section 775.084(5).
Collins, 893 So.2d at 593-94.[2] The Second District prohibited the State from correcting the error on remand by producing additional evidence. Id. The district court held that, where the defendant objects to a habitual felony offender sentence because the State failed to present sufficient evidence of the predicate convictions, and the appellate court reverses the sentence on that basis, the State cannot present additional evidence on remand. 893 So.2d at 594. The court noted "that a different rule applies where the defendant has failed to make a proper objection during the sentencing proceeding to the basis for the habitual offender sentence." Id. at 594 n. 2 (citing Bover, 797 So.2d at 1251). Thus, in the Second District, where the State fails to present sufficient evidence that the defendant was a habitual felony offender and the defendant objects, the State cannot present additional evidence on remand.
The Second District's holding conflicts with the law in the majority of districts. The court certified conflict with decisions of the First, Fourth, and Fifth District Courts of Appeal, which allowed the State to prove the predicate convictions on remand even though the defense had objected at sentencing. Id. at 594; see Wilson, 830 So.2d at 245 (permitting resentencing as a habitual felony offender on remand if the State can establish the required predicate convictions and the identity of the defendant as the person named in the judgments of conviction); Cameron, 807 So.2d at 747-48 (permitting resentencing as a habitual felony offender if the State introduces sufficient evidence to establish the defendant's release date within the five-year window); Morss, 795 So.2d at 263 (permitting resentencing as a habitual felony offender on remand following a reversal for failure to present copies of the prior felony judgments and sentences); *988 Roberts, 776 So.2d at 1034 (permitting resentencing as a habitual felony offender on remand upon proper proof); Brown, 701 So.2d at 410 (permitting resentencing as a habitual felony offender on remand upon presentation of proper proof that the defendant was the person named in the certified copies of judgments and convictions);[3]see also Walker v. State, 33 Fla. L. Weekly D44, D44, ___ So.2d ___, ___, 2007 WL 4462982 (Fla. 2d DCA Dec.21, 2007) (Altenbernd, J., concurring specially) ("Were we writing on a clean slate, I would follow the First, Fourth, and Fifth Districts in concluding that this evidentiary error does not preclude the State from seeking a habitual felony offender sentence on remand.").[4] We now resolve the conflict.

II. ANALYSIS
Before addressing the conflict issue, we must note the issues we do not resolve. The State has conceded that the evidence at sentencing was insufficient to sentence Collins as a habitual felony offender. Thus, the sufficiency of the evidence is not before us. Likewise, in Bover, we held that when the defense fails to object to the sufficiency of the evidence, the State may present additional evidence of habitual felony offender status. See Bover, 797 So.2d at 1251. Therefore, we do not decide that issue, either. Finally, we do not here consider the effect on resentencing proceedings of two recent United States Supreme Court cases: Apprendi v. New Jersey, 530 U.S. 466, 491, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that all facts that would enhance the defendant's sentence above the statutory maximum must be found by a jury), and Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that, for purposes of Apprendi, the statutory maximum is the maximum sentence that may be imposed based solely on the jury's findings).
What we do address is the narrow question left open in Bover: when the defendant does object at sentencing to the sufficiency of the State's evidence supporting the habitual felony offender sentence, and on appeal the district court reverses on that basis, on remand for resentencing may the State present new evidence that the defendant is a habitual felony offender? Our answer is yes. We hold that because resentencing is a de novo proceeding, on remand the State may present additional evidence to prove that the defendant qualifies for habitual felony offender sentencing.
In the following discussion, we: (A) explain that a resentencing is a de novo proceeding; (B) discuss the inapplicability of our decision in Shull v. Dugger, 515 So.2d 748 (Fla.1987), to habitual felony *989 offender sentencing; (C) explain that our decision does not implicate double jeopardy concerns; and (D) explain that resentencing as a habitual felony offender does not violate due process.

A. Resentencing as a New Proceeding
In both capital and noncapital cases, we have held that resentencing is a new proceeding. In death penalty cases, we have stated that "[t]he basic premise of sentencing procedure is that the sentencer is to consider all relevant evidence regarding the nature of the crime and the character of the defendant to determine appropriate punishment." Wike v. State, 698 So.2d 817, 821 (Fla.1997). Thus, we have recognized that a resentencing must proceed "as an entirely new proceeding," id., and that a "resentencing should proceed de novo on all issues bearing on the proper sentence." Teffeteller v. State, 495 So.2d 744, 745 (Fla. 1986). In noncapital cases, too, we have concluded that "resentencing entitles the defendant to a de novo sentencing hearing with the full array of due process rights." Trotter v. State, 825 So.2d 362, 367-68 (Fla.2002); see also Galindez v. State, 955 So.2d 517, 525 (Fla.2007) (Cantero, J., specially concurring) ("We have consistently held that resentencing proceedings must be a `clean slate,' meaning that the defendant's vacated sentence becomes a `nullity' and his `resentencing should proceed de novo on all issues bearing on the proper sentence.'" (citation omitted)); Walker, 33 Fla. L. Weekly at D44, ___ So.2d at ___ (Altenbernd, J., concurring specially) ("Generally, courts have held that once a defendant successfully challenges his sentence on appeal and the cause is remanded for resentencing, the resentencing is a `de novo' proceeding, at which either side may present evidence anew regarding the appropriate sentence.").
The principle of de novo sentencing often benefits the defendant. See, e.g., Galindez, 955 So.2d at 525 (Cantero, J., specially concurring) ("In fact, because resentencing is de novo, the State was required to produce evidence on sentencing issues even if the State established the fact at the original sentencing."); Tubwell v. State, 922 So.2d 378, 379 (Fla. 1st DCA 2006) ("As this resentencing proceeding was de novo, the state was not relieved of its burden to prove the prior offenses." (citations omitted)); Rich v. State, 814 So.2d 1207, 1208 (Fla. 4th DCA 2002) (holding that because resentencing following reversal is a new proceeding, the State must introduce evidence that the defendant qualifies for enhanced sentencing, even though such evidence was introduced in the previous sentencing hearing); Mills v. State, 724 So.2d 173, 174 (Fla. 4th DCA 1998) (holding that even though the defendant did not challenge his prior convictions at the original sentencing, law-of-the-case principles do not insulate the State from proving them at resentencing); Baldwin v. State, 700 So.2d 95, 96 (Fla. 2d DCA 1997) (agreeing that because resentencing is a new proceeding, the defendant may challenge the accuracy of prior convictions included on his scoresheet, even though he did not challenge them at the original sentencing).
We have also recognized that because a resentencing is a new proceeding, the court is not limited by the evidence originally presented. See Lucas v. State, 841 So.2d 380, 387 (Fla.2003) ("[A] resentencing court is not limited by evidence presented (or not presented) in ... the original... sentencing phase."); Mann v. State, 453 So.2d 784, 786 (Fla.1984) (recognizing that where a remand directs a new sentencing proceeding, both sides may present additional evidence).
Our decision in Mann illustrates this principle. At Mann's original capital sentencing *990 proceeding, the State introduced a Mississippi burglary conviction and presented testimony from the victim that Mann committed sexual battery. 453 So.2d at 785. Based on this evidence, the trial court found that the aggravating circumstance of previous conviction of a violent felony had been established. Id. On appeal, we held that the trial court erroneously found this aggravating circumstance because the judgment of conviction did not disclose that it involved violence. Mann v. State, 420 So.2d 578, 581 (Fla.1982). We also held that the trial court erroneously found another aggravating circumstance and that we could not determine what the trial court found regarding mitigation. Id. We therefore vacated the death sentence and remanded for resentencing without a jury. Id. On resentencing, in addition to the evidence presented at the first sentencing, the State introduced a copy of a Mississippi indictment charging Mann with "burglary both with the intent to commit unnatural carnal intercourse and that he did commit that crime." 453 So.2d at 786. The trial court again found that the Mississippi conviction established the prior violent felony aggravator. Id. at 785-86. On appeal from the resentencing, we rejected Mann's argument that our previous opinion precluded the State from presenting additional evidence to establish the previous conviction:
Our remand directed a new sentencing proceeding, not just a reweighing. In such a proceeding both sides may, if they choose, present additional evidence. Moreover, as we stated previously: "We are not presented with a copy of the Mississippi charge document and, thus, cannot determine whether it alleged, and the jury convicted him of, a breaking with intent to commit a crime of violence." The state remedied this omission on resentencing, and the proofthe indictment, the conviction, and the victim's testimonyestablishes a prior conviction of a violent felony.
Id. (citation omitted) (quoting Mann, 420 So.2d at 581). We affirmed the death sentence. Id.[5]
As we did in Mann regarding evidence establishing an aggravating factor (a case with the ultimate stakes for the defendant), we conclude that because a resentencing is a new proceeding, the State may present additional evidence on remand to prove the defendant qualifies for habitual felony offender sentencing. Our decision furthers the purpose of the habitual felony offender statute. See Richardson, 915 So.2d at 88 (recognizing that the purpose of section 775.084 "is to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and punished for crimes previously committed") (quoting Joyner v. State, 158 Fla. 806, 30 So.2d 304, 306 (1947)).

B. Shull Does Not Apply
Collins argues that our decision in Shull, 515 So.2d 748, applies. Shull held that *991 when the reasons for imposing a sentence departing from the sentencing guidelines are reversed on appeal, trial judges cannot impose departure sentences on remand. As we have since noted, however, implicit in our ruling in Shull "was our desire to preclude the possibility of a judge providing an after-the-fact justification for a previously imposed departure sentence." Jones v. State, 559 So.2d 204, 206 (Fla. 1990); see also Murray v. State, 616 So.2d 955, 956 (Fla.1993) (Barkett, C.J., specially concurring) ("The issue addressed in Shull was the danger of developing after-the-fact reasons for departure sentences."). Such a danger does not exist here. A judge imposing a habitual offender sentence need not justify the sentence with written reasons, except to find the predicate convictions for such a sentence. Therefore, as we now explain, Shull does not apply.
Before Shull, we had decided Whitehead v. State, 498 So.2d 863 (Fla.1986). In that case, we considered the continued viability of the habitual felony offender statute in light of the subsequently enacted sentencing guidelines. We held that: (1) the guidelines applied to all felonies (except capital felonies and felonies committed before October 1983), and therefore section 775.084 (the habitual offender statute) could not operate as an alternative to guidelines sentencing; and (2) the habitual offender statute could not be used as a reason for departing from the guidelines. See Whitehead, 498 So.2d at 865, 867.
Subsequently, in Shull, the defendant was sentenced to a ten-year departure sentence based solely on the habitual offender statute. 515 So.2d at 749. The defendant, citing Whitehead, filed a motion for postconviction relief alleging error in the use of his habitual offender status as a reason to depart. Shull v. State, 512 So.2d 1021, 1022 (Fla. 1st DCA 1987). The trial court denied his motion. The district court reversed. On review of the defendant's petition for habeas corpus, we held that the "trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by the appellate court." Shull, 515 So.2d at 750; see also Pope v. State, 561 So.2d 554, 556 (Fla.1990) ("[W]hen an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines."); Patten v. State, 531 So.2d 203, 205 (Fla. 2d DCA 1988) (interpreting Shull to prohibit enunciation of new reasons for a departure sentence after the original reasons given have been reversed on appeal).
Collins argues that the situation here is similar to departure sentencing. As noted above, in those situations, when the reasons supporting a departure sentence are found invalid on appeal, the trial court may not impose a departure sentence on remand. This line of cases is distinguishable, however. To begin with, Shull no longer applies to habitual felony offender sentencing. The legislature has amended section 775.084 to specify that a habitual felony offender sentence is not subject to the sentencing guidelines. It also amended section 775.084 to delete the requirement that the trial court determine "if it is necessary for the protection of the public to sentence the defendant to an extended term." See Ch. 88-131, § 6, at 708-09, Laws of Fla.; § 775.084(4)(h), Fla. Stat. (2001) ("A sentence imposed under this section is not subject to s. 921.002."). Habitual offender sentencing is now separate from both the sentencing guidelines and sentencing under the Criminal Punishment Code. See Bateman v. State, 566 So.2d 358, 359 (Fla. 4th DCA 1990) (recognizing that the amendment to section 775.084 superseded Whitehead and "a habitual offender sentence in excess of the guidelines, even *992 in the absence of stated reasons for departure, is now valid"); Owens v. State, 560 So.2d 1260, 1261 (Fla. 1st DCA 1990) (recognizing that Whitehead was decided before section 775.084 was amended so that once the defendant meets the definition of a habitual felony offender, the trial court is no longer required to provide written reasons for imposing a sentence in excess of the guidelines). In addition, unlike departure sentencing, which requires written reasons for departing from the guidelines, section 775.084 now requires written reasons only when the court finds that a habitual felony offender sentence is "not necessary for the protection of the public." § 775.084(3)(a)6., Fla. Stat. (2001); see Fla. R.Crim. P. 3.701(d)(11).
Even if the statutes had not been amended, the underlying reason for our decision in Shullpreventing after-the-fact justifications for a previously imposed departure sentenceis not implicated here. See Jones, 559 So.2d at 206 (recognizing that Shull does not apply to habitual offender sentencing and stating that "[t]his was not a case where the judge relied upon a reason for departure that was later declared invalid, but, rather, one in which the judge considered his sentence to be one to which the guidelines did not apply"). On remand for resentencing as a habitual felony offender, no danger exists that the judge will create after-the-fact justifications. In contrast to the subjective (and therefore manipulable) permissible reasons for departing from the guidelines when we decided Whitehead and Shull, see Fla. R.Crim. P. 3.701(d)(11) (1985) (allowing departures where there are "clear and convincing reasons" to do so), the decision to sentence as a habitual felony offender must be based solely on objective, mostly documentary, evidence of the defendant's prior felony convictions. See § 775.084(1)(a)-(d), Fla. Stat. (2001) (defining a habitual felony offender, habitual violent felony offender, three-time violent felony offender, and violent career criminal). Therefore, the concerns Shull addressed do not apply in this context.

C. Double Jeopardy
Our decision does not implicate double jeopardy concerns either. We have noted that "[t]he guarantee against double jeopardy consists of three separate constitutional protections: `It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Lippman v. State, 633 So.2d 1061, 1064 (Fla.1994) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). None of these protections is involved in a resentencing.
In almost identical circumstances, the United States Supreme Court has held that allowing the introduction of additional evidence at resentencing does not implicate double jeopardy concerns. See Monge v. California, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998). In Monge, the State sought to sentence the defendant under California's "three-strikes" law, another sentence enhancement statute based on prior convictions. As in this case, the State conceded that the evidence of the prior convictions was insufficient, but sought to prove the allegations on remand. Id. The Supreme Court held that the Double Jeopardy Clause does not preclude a second opportunity to prove that the defendant had a prior conviction that would trigger a sentence enhancement. Id. at 734, 118 S.Ct. 2246. The Court distinguished between an acquittal and a sentence:

*993 We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. Where a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt. The pronouncement of sentence simply does not "have the qualities of constitutional finality that attend an acquittal."
Id. at 729, 118 S.Ct. 2246 (citation omitted) (quoting United States v. DiFrancesco, 449 U.S. 117, 134, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)).
Like the United States Supreme Court, we find that the Double Jeopardy Clause does not preclude granting the State a second opportunity to demonstrate that Collins meets the criteria for habitualization. A second attempt to prove the criteria for an enhanced sentence does not equate to "a second prosecution for the same offense after acquittal." Lippman, 633 So.2d at 1064 (quoting Pearce, 395 U.S. at 717, 89 S.Ct. 2072). We have held in other contexts that a resentencing following a reversal on a sentencing issue does not implicate double jeopardy concerns. See Trotter, 825 So.2d at 368 (holding that double jeopardy principles are not violated where the trial court did not impose a multiplier at the original sentencing but imposed a multiplier on remand); Harris v. State, 645 So.2d 386, 388 (Fla. 1994) (holding that imposition of a habitual offender sentence on remand after the trial court's pronouncement of a non-habitual sentence in the original proceeding does not violate double jeopardy); see also Walker, 33 Fla. L. Weekly at D44, ___ So.2d at ___ (Altenbernd, J., concurring specially) ("There is no doubt that double jeopardy is not implicated in this case because Mr. Walker has successfully sought reversal of the sentence in this appeal."). The same is true here.

D. Due Process
The final issue is whether granting the State a second opportunity to demonstrate that Collins meets the criteria for habitualization violates due process. We hold that it does not. Certainly, due process principles apply to a resentencing. See Griffin v. State, 517 So.2d 669, 670 (Fla.1987) ("The pronouncement of sentence upon a criminal defendant is a critical stage of the proceedings to which all due process guarantees attach whether the sentence is the immediate result of adjudication of guilt or, as here, the sentence is the result of an order directing the trial court to resentence the defendant."); State v. Scott, 439 So.2d 219, 220 (Fla. 1983) ("[O]nce the court has determined that the sentence was indeed illegal and the prisoner is entitled to a modification of the original sentence or the imposition of a new sentence, the full panoply of due process considerations attach."). In Trotter, however, we explained that in resentencing proceedings, "[t]he due process inquiry ... is whether the new sentence ... constitutes a vindictive sentence." 825 So.2d at 368 (citing Pearce, 395 U.S. at 725-26, 89 S.Ct. 2072). We further explained that "the presumption of vindictiveness arises only when a judge imposes a more severe sentence upon resentencing." Id. at 369.
Here, Collins was originally sentenced as a habitual felony offender and has yet to be resentenced (we stayed the district court's mandate). As long as the sentence imposed following resentencing is not more severe, the presumption of vindictiveness does not arise. Trotter, 825 So.2d at 369; see also People v. Barragan, 32 Cal.4th 236, 9 Cal.Rptr.3d 76, 83 P.3d 480, 486 (2004) (refusing to "use the Due Process Clause as a device for extending the double jeopardy protection to cases where *994 it otherwise would not extend" and concluding that a retrial of a prior adjudication does not violate due process) (quoting Dowling v. United States, 493 U.S. 342, 354, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).

III. CONCLUSION
For the reasons stated, we hold that when a habitual offender sentence is reversed because of insufficient evidence, on remand for resentencing the State may again attempt to prove that the defendant meets the criteria for such sentencing. We therefore approve the decision of the Second District reversing Collins's sentence, but quash the decision to the extent it precludes the State from introducing additional evidence on remand. On that issue, we approve the conflicting decisions in Wilson, Cameron, Morss, Roberts, and Brown.
It is so ordered.
WELLS, PARIENTE, and BELL, JJ., concur.
PARIENTE, J., concurs with an opinion.
ANSTEAD, J., dissents with an opinion, in which LEWIS, C.J., and QUINCE, J., concur.
QUINCE, J., dissents with an opinion, in which LEWIS, C.J., and ANSTEAD, J., concur.
PARIENTE, J., concurring.
While I have considered the dissenting positions of both Justice Anstead and Justice Quince, I conclude that the bases of their dissents are not jurisprudentially sound in this case. Contrary to Justice Anstead's broad assertions analogizing what has occurred here to the State's failing to prove an essential element in the guilt phase, there are important distinctions between the guilt and sentencing phases of a criminal proceeding. As Justice Cantero has articulated in the majority opinion, although double jeopardy concerns prohibit the State from getting a second bite at the apple after it has failed to prove an essential element of a crime during the guilt phase, these same concerns do not bar the State from attempting to prove a prior conviction at a resentencing proceeding. Majority op. at 992-93.
In fact, in Trotter v. State, 825 So.2d 362 (Fla.2002), in which this Court addressed the impact of its decision in Heggs v. State, 759 So.2d 620 (Fla.2000),[6] we specifically rejected a double jeopardy challenge to the State seeking and the trial court imposing a drug trafficking multiplier upon resentencing. In Trotter, the defendant was originally sentenced under the 1995 guidelines to 83.2 months' incarceration on a trafficking charge. 825 So.2d at 364. After a reversal because the sentence imposed under the 1995 guidelines was unconstitutional, the trial court applied a drug trafficking multiplier and sentenced Trotter to 72 months' incarceration. Id. After the Fifth District affirmed the trial court's application of the multiplier, Trotter appealed to this Court arguing that his double jeopardy and due process rights were violated by the trial court imposing the multiplier when it had not done so at the original sentencing proceeding. Id. at 365. Importantly, this Court acknowledged *995 that "a resentencing pursuant to Heggs is a de novo sentencing proceeding that must comport with constitutional requirements," but held that no double jeopardy violation occurred "even though the trial court declined to impose the multiplier at the original sentencing." Id. at 368. We concluded that Trotter was "not deprived of any reasonable expectation of finality in his original sentence because he challenged his sentence on appeal on a legal basis." Id.
Even more persuasive is the majority's reliance on Monge v. California, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), where the United States Supreme Court held that the State could be given a second opportunity to prove that a defendant had a prior conviction that would trigger a sentence enhancement without violating double jeopardy principles. Id. at 734, 118 S.Ct. 2246. Similar to Monge, the issue in this case is whether giving the State another opportunity to establish the sequential conviction requirement for a habitual offender sentence at a resentencing violates any constitutional principles or any of our precedent. In line with the majority's decision in this case, I conclude that the State's failure to satisfy the sequential conviction requirement at the original sentencing proceeding does not constitute an acquittal of the habitual offender sentence and accordingly a defendant's right against double jeopardy is not violated.
Although we did not discuss the concepts of double jeopardy or due process in our decision in Bover v. State, 797 So.2d 1246 (Fla.2001), that opinion is the natural precursor to the issue presented in this case. As in Collins, the State in Bover attempted to establish the necessary predicate offenses for imposition of a habitual offender sentence. Id. at 1250. We held that Bover's habitual offender sentence constituted an illegal sentence because it did not appear on the face of the record to satisfy the sequential conviction requirement. Id. at 1250-51 (noting that the multiple convictions occurred on the same day and there was no evidence that the convictions occurred at separate sentencing proceedings). A unanimous court recognized that when there was no objection by the defendant to the predicate offenses, upon remand the State should have the opportunity to present record evidence that other prior convictions existed that would satisfy the sequential conviction requirement. Id. at 1251.
I agree with the majority's reasoning in extending Bover to circumstances where there is an objection, which will give the State the opportunity on remand to establish that the sequential conviction requirement has been met. In sentencing, we must balance the interests of the defendant against the interests of society. Because one of the interests is fairness to the defendant, our rules of procedure have allowed an illegal sentence to be corrected at any time, trumping our usual concerns about finality. Undoubtedly, we have attempted over the years to encourage that all sentencing errors be brought to the trial court's attention at the earliest opportunity in order to benefit the defendant. See Maddox v. State, 760 So.2d 89 (Fla. 2000), and its progeny.
I also acknowledge the issue raised in Justice Quince's dissent about the waste of judicial resources in cases where the State has failed to get it right the first time. Indeed, Justice Quince cites an impressive number of cases in which the sentence was reversed because prosecutors arrived at sentencing without the proof required by statute. Dissenting op. at 998-1000 (Quince, J.). However, although we would hope that the State would take all steps to prevent the need for resentencing, I also *996 believe that society's interest in having a habitual offender sentence imposed where the defendant meets the criteria of the predicate offenses outweighs the defendant's interest in finality in these circumstances.
Furthermore, because I believe the Court's holding is narrow, namely, that the State is permitted on remand "to present additional evidence to prove that the defendant qualifies for habitual felony offender sentencing" even though Collins objected, concerns over vindictive sentencing, another constitutional consideration, are not present. However, as noted by the majority and discussed in more detail in Trotter, it is still possible for the presumption of vindictiveness to arise if the trial court imposes a greater sentence on remand than Collins originally received. Majority op. at 993. Thus, I recognize the concerns raised by Justice Anstead in his dissent, and therefore would not foreclose the possibility of a constitutional challenge in other circumstances where the State's conduct on resentencing has not comported with fundamental notions of fairness.[7] In my view, however, allowing the State another opportunity to establish the defendant's predicate convictions at resentencing does not violate such principles.
In sum, although I am hesitant to state that fundamental fairness considerations might never dictate a different result, I discern no constitutional bar or other public policy reason for arriving at a contrary result in these circumstances. Therefore, I concur in the Court's decision today but strongly urge the State to do its homework and always come to court adequately prepared to lay the necessary foundation for habitual offender sentencing and other related sentencing issues.
ANSTEAD, J., dissenting.
I concur in Justice Quince's dissent and would affirm the Second District's decision not to grant the State a second opportunity to prove its case by producing new evidence.
Some cases cry out for resolution by application of the most basic and fundamental rules of criminal trial procedure. There can hardly be a more fundamental principle of law than the rule that the party making an affirmative assertion assumes the burden of proving that assertion. The corollary to this rule, of course, is that when that party fails to carry that burden the affirmative assertion fails. We need not, and should not, look beyond this fundamental principle in resolving this case.[8]
*997 Here, there is no dispute that the State had the burden of proof to demonstrate, by evidence properly admissible under the rules of evidence, that the defendant met the legal requirements for a more severe sentence than would normally be allowed, in this case by imposition of the habitual felony sentencing scheme. And there is no dispute that the State failed to carry that burden. That should be the end of the matter, and would, if this Court properly applied the fundamental rule of burden of proof. As Judge Canady explained in his opinion for the Second District:
The State requests that we remand this case to permit it an opportunity to produce new evidence that Collins qualifies for a habitual felony offender sentence. In the sentencing proceeding, Collins's counsel specifically objected that the documents offered by the State failed to demonstrate a sufficient number of separately sentenced prior felony convictions. In previous cases, when an appropriate objection to a habitual felony offender sentence was presented in the trial court at sentencing, this court has not afforded the State a second opportunity on remand to demonstrate that the defendant meets the habitual felony offender criteria. See Wallace v. State, 835 So.2d 1281 (Fla. 2d DCA 2003); Rivera v. State, 825 So.2d 500 (Fla. 2d DCA 2002); Reynolds v. State, 674 So.2d 180 (Fla. 2d DCA 1996). Accordingly, we remand for resentencing under the Criminal Punishment Code.
Collins v. State, 893 So.2d 592, 594 (Fla. 2d DCA 2004) (footnotes omitted). Instead of applying the simple burden of proof rule, however, the majority rejects Judge Canady's simple logic and now determines that the State is entitled to a second chance to correct its mistaken understanding of the Florida rules of evidence and is further entitled to produce new evidence to meet its burden of proof. The majority's conclusion ignores the fact that the State was specifically put on notice of its mistake by the defense objection.
After all, the majority seems to imply, the records offered by the State indicate the defendant may appear to be eligible for habitual offender sentencing, so why should we let the State's mistaken understanding of our evidence law stand in the way? This time, the State and its advocates assert, we will get it right. Well, the reason we should not afford the State a second chance to prove its case is that we are obligated to apply the rule of law consistently and uniformly to all parties. And the rule of law that we should be applying today is the rule that the State had the burden at the sentencing hearing to establish, by properly admissible evidence, that the defendant qualified for and should receive a more severe sentence under the habitual offender scheme. The State, of course, like the defendant and all other parties to litigation, is charged with knowing that it had the burden of proof and knowing the rules of evidence.[9]
Imagine a case where the State puts on a single witness to prove a crime but the evidence of the witness is all improper hearsay gathered by the witness in a conversation with an eyewitness. In reversing a conviction based upon such evidence, surely no appellate court would permit the State a second chance to prove its case, *998 this time to call the eyewitness. It is pure sophistry to suggest that the State's burden of proof at the sentencing hearing to invoke the habitual sentencing scheme by the use of proper and sufficient evidence should be treated any differently than its burden to prove the commission of an offense by properly admissible evidence. Since when do we treat errors in complying with the evidence code and the admission of evidence as somehow entitling the party bearing the burden of proof to a second chance if the evidence presented is found deficient or insufficient?
Oh, there could be a difference if we take a seductive and tempting glance at the defendant's record and the possibility of the State offering new evidence and correcting its mistakes at a second hearing. But we cannot properly look beyond the record in this case to speculate that the State will be able to prove its case the second time around. It is no more permissible for this Court to look at what might have been in this case than it would for a court to look at what an eyewitness's testimony might have been in the example set out above. Either the State carried its burden of proof by sufficient admissible evidence or it did not. That is the rule of law, and that is why I would approve the Second District's opinion.
LEWIS, C.J., and QUINCE, J., concur.
QUINCE, J., dissenting.
I dissent because I do not believe that in circumstances where the State knew or should have known what was required to be shown in order to get the defendant's sentence enhanced but failed to present evidence to the trial court, the State should have another opportunity to attempt to enhance the sentence.
Section 775.084, Florida Statutes, sets out the requirements the State must prove by a preponderance of the evidence in order to prove that a defendant is a habitual felony offender (HFO) or a habitual violent felony offender (HVFO) and have the court impose an extended term of imprisonment on the defendant. When a state prosecutor chooses to seek HFO or HVFO sentencing, proof that every statutory requirement is met should be confirmed and sufficiently documented before the sentencing hearing is held. Of course there will be cases of first impression and cases which fine-tune or clarify various aspects of the statute. What I have discovered with regard to application of this statute by state prosecutors and trial judges, however, is well beyond any normal learning curve of statutory interpretation.
Even a small amount of research into case history involving sentencing under this statute reveals that for years and years, all over this state, prosecutors have arrived at sentencing procedures without the proof required by statute and set out in our case law. And so the cycle begins: The State presents slightly deficient proof of HFO or HVFO; the defense objects that the proof is not sufficient evidence; the trial judge imposes HFO sentencing despite the deficiency and the objection; the prisoner, public defender, or a private attorney files an appeal or a motion for postconviction relief; briefs are written and filed by the defendant and the State, the motion is summarily denied and an appeal is filed, or hearings are held, appearances are made, orders or opinions are written and issued; frequently the sentence is affirmed and review is then sought by a higher court of appeal; again, briefs are written and filed, arguments may be scheduled, court conferences are held, orders or opinions are written and issued; a resentencing is scheduled; and resentencing takes place at a de novo court proceeding at which both the State and the defendant *999 present evidence and call witnesses. By the time a new sentence is finally handed down, often years after the initial sentencing, an enormous amount of judicial time has been spent in terms of judges, lawyers, clerks and court personnel, all at enormous expense to the system and this state.
The fact is, all of this time and expense could be avoided if prosecutors were prepared with proper and sufficient evidence of HFO status, and if they are not, the trial judges would refuse to impose HFO sentencing. It seems so obvious, so fundamental, yet apparently this has not been the order of things. The following is but a small sampling of appellate cases from each of the district courts of appeal involving the prosecutors' failure to present the information needed to correct enhanced sentencing that had been imposed. See McNair v. State, 920 So.2d 111 (Fla. 1st DCA 2006) (resentencing ordered where State did not properly prove two or more predicate felonies as required to habitualize); Rogers v. State, 944 So.2d 513 (Fla. 4th DCA 2006) (resentencing ordered where State failed to provide competent evidence of date of defendant's release from prison); Riser v. State, 898 So.2d 116 (Fla. 2d DCA 2005) (resentencing ordered where State failed to show predicate offenses as enumerated in section 775.084, Florida Statutes); Cook v. State, 893 So.2d 653 (Fla. 4th DCA 2005) (resentencing ordered where State failed to show that defendant's prior convictions involved at least three different offenses); Klauer v. State, 873 So.2d 555 (Fla. 1st DCA 2004) (resentencing ordered where State failed to prove defendant's prior offenses qualified as section 775.084 enumerated offenses); Prudent v. State, 867 So.2d 646 (Fla. 3d DCA 2004) (resentencing ordered where State failed to establish that defendant was the same person who was convicted of the predicate felonies used to support the sentence); Hughes v. State, 850 So.2d 664 (Fla. 1st DCA 2003) (resentencing ordered where State failed to prove proper predicate felonies as enumerated in section 775.084, Florida Statutes); Walker v. State, 842 So.2d 969 (Fla. 4th DCA 2003) (resentencing ordered where State failed to prove satisfactory evidence of predicate convictions); Robinson v. State, 830 So.2d 251 (Fla. 1st DCA 2002) (resentencing ordered where record evidence did not support a finding that the defendant had requisite sequential convictions to qualify as HFO); Suarez v. State, 808 So.2d 1288 (Fla. 3d DCA 2002) (resentencing ordered where prior case relied on by State did not qualify as prior conviction under section 775.084, Florida Statutes); Benjamin v. State, 814 So.2d 530 (Fla. 3d DCA 2002) (resentencing ordered because HVFO sentencing should not have been imposed where none of defendant's current crimes were enumerated as qualifying offenses in section 775.084, Florida Statutes); Gordon v. Moore, 832 So.2d 880 (Fla. 3d DCA 2002) (resentencing ordered where predicate convictions relied on by trial court did not meet sequential convictions requirement); Wilson v. State, 830 So.2d 244 (Fla. 4th DCA 2002) (resentencing ordered where State failed to provide sufficient evidence of defendant's prior convictions to support its claim that he qualified for habitual felony offender status); Cameron v. State, 807 So.2d 746 (Fla. 4th DCA 2002) (resentencing ordered where State failed to provide record evidence of the date of the current felony offense); Rich v. State, 814 So.2d 1207 (Fla. 4th DCA 2002) (resentencing ordered where State failed to introduce evidence that proved defendant qualified for enhanced sentencing under section 775.084, Florida Statutes); Boyd v. State, 776 So.2d 317 (Fla. 4th DCA 2001) (resentencing ordered where State's evidence was insufficient to establish release *1000 date); Hemmy v. State, 835 So.2d 272 (Fla. 2d DCA 2001) (resentencing ordered where State failed to establish by affirmative evidence the identity of the accused as the person previously convicted of the predicate crimes); Alix v. State, 799 So.2d 359 (Fla. 3d DCA 2001) (resentencing ordered where State did not prove that prior foreign offense was substantially similar to a section 775.084 qualifying offense); Wainer v. State, 798 So.2d 885 (Fla. 4th DCA 2001) (resentencing ordered where State did not provide satisfactory evidence of predicate convictions); Morss v. State, 795 So.2d 262 (Fla. 5th DCA 2001) (resentencing ordered after State failed to present copies of defendant's judgments and sentences); Sanders v. State, 765 So.2d 161 (Fla. 2d DCA 2000) (resentencing ordered where State presented no evidence as to date defendant was released from prison for prior offenses); Freeman v. State, 773 So.2d 110 (Fla. 5th DCA 2000) (noting that resentencing had been ordered after State improperly habitualized defendant for two offenses arising out of the same criminal episode); Smith v. State, 766 So.2d 1257 (Fla. 5th DCA 2000) (resentencing ordered where trial court erred in relying on two convictions that had been entered at the same time; an HFO sentence cannot be predicated upon an offense or conviction occurring after current offense); Bellamy v. State, 712 So.2d 409 (Fla. 2d DCA 1998) (resentencing ordered where State did not prove the dates on which the defendant was convicted or released from prison); Hampton v. State, 711 So.2d 200 (Fla. 5th DCA 1998) (resentencing ordered where defendant was incorrectly adjudicated HFO for misdemeanor conviction); Brown v. State, 701 So.2d 410 (Fla. 1st DCA 1997) (ordering resentencing after State did not provide proper fingerprint authentication); Williams v. State, 692 So.2d 292 (Fla. 3d DCA 1997) (resentencing ordered where State failed to submit sufficient proof that defendant was the person who committed prior offense); Olsen v. State, 691 So.2d 17 (Fla. 3d DCA 1997) (resentencing ordered where State failed to establish that defendant was person convicted of predicate felonies used to support HFO sentencing); Reynolds v. State, 674 So.2d 180 (Fla. 2d DCA 1996) (resentencing ordered where State did not provide affirmative proof of critical dates); Stephenson v. State, 666 So.2d 573 (Fla. 2d DCA 1996) (resentencing ordered where State failed to provide sufficient evidence that defendant committed present offenses within five years of release from prison); Ford v. State, 652 So.2d 1236 (Fla. 1st DCA 1995) (resentencing ordered where State improperly introduced prior convictions that had not been sentenced separately); Louis v. State, 647 So.2d 324 (Fla. 2d DCA 1994) (resentencing ordered where State failed to prove proper fingerprint authentication of predicate crimes); Huggins v. State, 616 So.2d 188 (Fla. 1st DCA 1993) (ordering resentencing where defendant did not qualify for HFO because present offense did not occur within five years of his release on parole from a prison sentencing as required by section 775.084, Florida Statutes); Kerney v. State, 605 So.2d 159 (Fla. 2d DCA 1992) (resentencing ordered where there was insufficient proof that defendant was released from custody within five years of commission of instant crime); Killingsworth v. State, 584 So.2d 647 (Fla. 1st DCA 1991) (resentencing required where State did not provide proper fingerprint authentication); Wagner v. State, 578 So.2d 56 (Fla. 1st DCA 1991) (ordering resentencing after trial court erred in sentencing defendant as HFO based on previous convictions all entered on the same day); Flewelling v. State, 576 So.2d 742 (Fla. 1st DCA 1991) (resentencing ordered where trial court erred in sentencing defendant as an HFO without *1001 explicit proof of two or more felonies in this state); Rowland v. State, 583 So.2d 813 (Fla. 2d DCA 1991) (resentencing ordered where trial court failed to make specific findings of prior convictions on the record pursuant to section 775.084, Florida Statutes); Cuthbert v. State, 459 So.2d 1098 (Fla. 1st DCA 1984) (resentencing ordered where court failed to make requisite findings necessary for habitual offender sentence).
Thus, I believe that the Second District's approach, remanding for resentencing under the criminal punishment code and not allowing a second bite at demonstrating habitual offender treatment, saves resources and gives the State an incentive to be prepared for the sentencing process just as it is prepared for the guilt/innocence phase of the proceedings. Therefore, I would approve the decision of the Second District in this case.
LEWIS, C.J., and ANSTEAD, J., concur.
NOTES
[1] That section provides: "In order to be counted as a prior felony for purposes of sentencing under this section, the felony must have resulted in a conviction sentenced separately prior to the current offense and sentenced separately from any other felony conviction that is to be counted as a prior felony." (Emphasis added.)
[2] Although the Second District stated the issue as whether the sentences were imposed "on the same date," see Collins, 893 So.2d at 593, for purposes of section 775.084(5), the relevant inquiry is whether the sentencing for the prior felonies occurred in the same proceeding. See State v. Richardson, 915 So.2d 86, 89 (Fla.2005) (quoting Bover v. State, 797 So.2d 1246, 1250 (Fla.2001)). Because the State has not raised this issue and it conceded at oral argument that the evidence below was insufficient, we do not address this issue.
[3] Collins also certified conflict with Rhodes, 704 So.2d at 1083. The opinion in Rhodes, however, does not discuss whether the defendant objected to the sufficiency of the evidence. If the defendant failed to object, the conflict could be resolved based on the same distinction the Second District drew in Collins. All the cases cited in the text involved defendants who objected at sentencing.
[4] In Walker, all three members of the panel concurred in Judge Altenbernd's specially concurring opinion that, absent precedent in the Second District, he would follow the law from the First, Fourth, and Fifth Districts that this evidentiary error does not preclude the State from presenting new evidence on remand. Judge Altenbernd authored a similar opinion, joined by Judge Kelly, in Lloyd v. State, 844 So.2d 713, 715 (Fla. 2d DCA 2003) (Altenbernd, C.J., concurring specially) (acknowledging the Second District precedent but arguing that "both sides to the controversy are simply entitled to a new sentencing hearing where the necessary evidence is presented and the correct law is applied"). Thus, it appears at least four judges in the Second District would agree with the First, Fourth, and Fifth Districts if not for Second District precedent.
[5] Although not relevant to the precedential value of our decision in Mann, we note that the Eleventh Circuit Court of Appeals later vacated Mann's sentence on other grounds. See Mann v. Dugger, 844 F.2d 1446, 1458-59 (11th Cir.1988) (en banc) (finding the jurors were misinformed as to the importance of their recommendation, contrary to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). The resentencing resulted in another death sentence, which we affirmed. See Mann v. State, 603 So.2d 1141, 1144 (Fla. 1992). Mann v. Dugger was subsequently overruled. See Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir.1997) (recognizing that references to and descriptions of the jury's verdict as "advisory," as a "recommendation," and of the judge as the "final sentencing authority" are permissible under Romano v. Oklahoma, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994)).
[6] In Heggs, a majority of the Court struck down a law that amended several statutory provisions concerning sentencing guidelines, departure sentences, and penalty classifications for certain criminal offenses. Id. at 625-26. Because portions of the 1995 sentencing guidelines were rendered unconstitutional, the Court recognized its decision would require the resentencing of those defendants whose sentences were adversely affected by the law. Id. at 627. Trotter was one such defendant.
[7] Justice Anstead's dissent also includes a reference to Apprendi to support his position. As the majority notes, the relevance of Apprendi has not been raised by the parties as an issue here. Even if the issue had been raised, it would not in my view change the result. See Dinkens v. State, 976 So.2d 660, 662 (Fla. 1st DCA 2008) (finding that the argument that the HFO statute violates Apprendi "has been repeatedly rejected by Florida courts" and that the statute "is based solely on prior convictions and therefore does not require a jury determination pursuant to Apprendi").
[8] The majority mistakenly places great reliance on the fact that the defendant will have to be resentenced because the Second District has stricken the habitual sentence erroneously imposed. The majority seems to treat the need for resentencing as some talisman for starting all over when in fact the resentencing has only been ordered for the narrow purpose to correct the error of the improper imposition of a habitual offender sentence and to achieve a legal sentence. This situation is distinguishable from one where a new trial is ordered and a de novo sentencing, if there is a conviction, is part of the risk assumed with an appeal. Here, the defendant asserting the State's flawed proof has been told by the majority "heads you lose and tails the State wins." Why appeal?
[9] Enforcing this fundamental principle is especially important in light of the United States Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny that any factor alleged by the government to allow for an enhanced sentence must be treated and proven as an element of the crime. Imagine this Court in a death penalty case finding the State's proof of a statutory aggravating factor defective, but giving the State a second opportunity to prove the aggravator.