# Supreme Court of Florida

_____

No. SC19-712
_____

**KEITA JERMAINE GAYMON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

January 23, 2020

LAWSON, J.

We accepted jurisdiction in this case to review the following question

certified to be of great public importance by the First District Court of Appeal:

> Whether the second sentence in subsection (10) of section 775.082,
> Florida Statutes, which authorizes a trial judge to make factual
> findings independent of a jury as to an offender's potential "danger to
> the public" and to impose a state prison sentence that exceeds the
> maximum nonstate sanction of up to one year in county jail violates
> the Sixth Amendment as applied to [the defendant]?  If the error is not
> harmless, what remedy is appropriate?

*Gaymon v. State*, 268 So. 3d 222, 224 (Fla. 1st DCA 2019).  We have jurisdiction.

*See* art. V, § 3(b)(4), Fla. Const.[1]

---

1.  As explained in *Gaymon*, this issue was originally certified in *Booker v.
State*, 244 So. 3d 1151 (Fla. 1st DCA 2018), *review granted*, No. SC18-752 (Fla.

The first part of this question was resolved in *Brown v. State*, 260 So. 3d 147, 150 (Fla. 2018), where we held that the portion of section 775.082(10), Florida Statutes (2015), which required the court, not the jury, to find the fact of dangerousness to the public necessary to increase the statutory maximum nonstate prison sanction violated the Sixth Amendment. Accordingly, we rephrase the certified question as follows:

> What is the proper remedy for harmful error resulting from the court, not the jury, finding the fact of dangerousness under section 775.082(10) in violation of the Sixth Amendment?

Having held statutory revival to be the proper remedy, the First District vacated Gaymon's sentence and remanded for resentencing under the prior version of the sentencing statute, which could have resulted in reimposition of Gaymon's sentence without any findings by a jury or the trial court. *Gaymon*, 268 So. 3d at 224; § 775.082(3)(d), Fla. Stat. (2008) (now codified at § 775.082(3)(e), Fla. Stat. (2015)). As explained below, we quash the First District's decision in this case and answer the rephrased question by holding that the proper remedy for harmful

---

Apr. 1, 2019). *Gaymon*, 268 So. 3d at 224. After accepting discretionary review of *Booker* pursuant to article V, section 3(b)(4) of the Florida Constitution, we accepted review of *Gaymon*, over which we also have jurisdiction because *Booker* remains pending in this Court. *See Jollie v. State*, 405 So. 2d 418, 420 (Fla. 1981). We elected to address the question of great public importance in Gaymon's case after being notified that Booker had completed his prison sentence.

error[2] resulting from the court, not the jury, finding the fact of dangerousness under section 775.082(10) is to remand for resentencing with instructions to either impose a nonstate sanction of up to one year in county jail or empanel a jury to make the determination of dangerousness, if requested by the State.

## BACKGROUND

Gaymon initially pled no contest to charges of fraudulent use of personal identification information and fraudulent use of a credit card, third-degree felonies with a maximum penalty of five years in state prison. Gaymon admitted to violating his probation, and the trial court sentenced him to five years' imprisonment. The statute under which Gaymon was sentenced, section 775.082(10), Florida Statutes (2015) (subsection (10)),[3] provides as follows:

> If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the

2. We note that the State's answer brief filed in the First District contained a brief argument that any error in failing to have a jury make the dangerousness finding in Gaymon's case was harmless, citing *Galindez v. State*, 955 So. 2d 517, 523-24 (Fla. 2007). As there was no briefing on this issue in this Court, we have not addressed it and therefore assume for purposes of our analysis that the error was harmful.

3. While the 2015 version of the statute is at issue, the statutory language of subsection (10) has remained the same since 2009.

public, the court may sentence the offender to a state correctional facility pursuant to this section.

§ 775.082(10), Fla. Stat. Since Gaymon's scoresheet reflected twenty sentence points, the statutory maximum penalty was a nonstate prison sanction of up to one year under subsection (10). The trial court increased Gaymon's punishment beyond the nonstate maximum, sentencing him to a five-year state prison term based on the court's independent factual findings that Gaymon could present a danger to the public if subject only to a nonstate prison sanction.

In the decision on review, the First District relied on our decision in *Brown* to hold subsection (10) unconstitutional as applied to Gaymon. Specifically, the First District held that the sentencing court's reliance on facts—other than Gaymon's prior convictions—that were not found by a jury to increase the penalty beyond the statutory maximum nonstate prison sanction violated the Sixth Amendment in light of the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). *Gaymon*, 268 So. 3d at 223-24 (citing *Brown*, 260 So. 3d at 149-51). Relying on its previous decision in *Booker*, 244 So. 3d at 1169, the First District held that statutory revival was the proper remedy and remanded the case for resentencing under the prior version of the sentencing statute, which is reflected in section 775.082(3)(e)'s authorization for the trial court to impose any term of imprisonment up to five years. *Gaymon*, 268 So. 3d at 224. Gaymon petitioned

- 4 -

this Court for review, and we accepted jurisdiction to resolve the issue left open in *Brown*, namely the proper remedy for harmful error resulting from the court, not the jury, finding the fact of dangerousness under subsection (10).

## ANALYSIS

The parties suggest four remedies for the *Apprendi*/*Blakely* violation that occurred: (1) severing the second sentence from subsection (10) while leaving the rest of the statute intact; (2) reviving section 775.082(3)(e) and thereby authorizing the trial court to impose any term of imprisonment up to five years; (3) remanding for resentencing to a constitutionally permissible sentence under subsection (10), i.e., a nonstate prison sanction of less than one year; or (4) remanding for resentencing with an opportunity to empanel a jury to determine the dangerousness issue.  For the reasons set forth below, we hold that the latter option is the proper remedy and will demonstrate why by addressing each of the possible remedies.

Regarding the first proposed remedy of severance, this Court has held that when a portion of a statute is declared unconstitutional, the rest of the statute will be permitted to stand provided:

> (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.

*Cramp v. Bd. of Pub. Instruction of Orange Cty.*, 137 So. 2d 828, 830 (Fla. 1962). With respect to the severance remedy, the third *Cramp* factor is not satisfied, as it is not clear that the Legislature would have passed subsection (10) without the upward departure provision regarding offenders who present a danger to the public. *See Barndollar v. Sunset Realty Corp.*, 379 So. 2d 1278, 1281 (Fla. 1979) ("When . . . the valid and void parts of a statute are mutually connected with and dependent upon each other as conditions, considerations, or compensations for each other, then a severance of the good from the bad would effect a result not contemplated by the legislature . . . ." (quoting *Small v. Sun Oil Co.*, 222 So. 2d 196, 199-200 (Fla. 1969))). We accordingly reject the first proposed remedy.

We also reject the second option, statutory revival, because it would be inconsistent with the plain purpose of this legislative enactment—mandating non-state prison sanctions for most low-scoring offenses. Although we have recognized that statutory revival is appropriate under certain circumstances, *see, e.g.*, *B.H. v. State*, 645 So. 2d 987, 995 (Fla. 1994) (holding that statutory revival is an appropriate remedy where the Legislature approves unconstitutional statutory language and simultaneously repeals its predecessor), we have also refused to adopt statutory revival as a remedy where it would be "patently inconsistent with the legislative intent as to the appropriate remedy," *Horsley v. State*, 160 So. 3d 393, 395 (Fla. 2015). This is one of those instances, as reviving section

775.082(3)(e) would violate the obvious purpose underlying the Legislature's enactment of subsection (10), which is to require nonstate prison sanctions for low-scoring offenders in all cases where the lesser sentence would not endanger the public. Another practical consideration also counsels against statutory revival. Statutory revival in this case would oddly render every constitutional violation (of failing to submit the issue of dangerousness to a jury) harmless error—thereby leaving those who suffered a constitutional deprivation with no remedy at all. We therefore reject the second proposed remedy of statutory revival and quash that part of the First District's decision adopting statutory revival as the proper remedy.

This leaves two other proposed remedies: (1) remanding for resentencing to a nonstate prison sanction or (2) remanding for resentencing with instructions to empanel a jury to determine the dangerousness finding. Remanding for resentencing under the valid portion of subsection (10) would reach the same result as severance—something our severance jurisprudence would not permit as explained above. The nonstate prison sanction would become the mandatory sentence for all offenders that meet subsection (10)'s criteria even if they could present a danger to the public, and it is not clear that the Legislature would have passed subsection (10) without the upward departure provision. Remanding for resentencing under the valid portion of subsection (10) would also be inconsistent with the approach we have taken in the death penalty context. *See Williams v.*

- 7 -

*State*, 242 So. 3d 280, 294-95 (Fla. 2018) (Canady, J., concurring in part and dissenting in part) (explaining that the Court remanded for a new penalty phase proceeding in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), and that "we have summarily rejected as 'without merit' claims based 'on double jeopardy and due process grounds' that the State 'is precluded from seeking the death penalty' in *Hurst* resentencing proceedings" (quoting *Hurst v. State*, No. SC17-302, 2017 WL 1023762, at *1 (Fla. Mar. 16, 2017) (unpublished))). The Sixth Amendment violation in subsection (10) is sufficiently similar to the capital sentencing errors to which *Hurst* applies since both "involve failing to present an issue to the jury that must be decided by the jury." *Williams*, 242 So. 3d at 296 (Canady, C.J., concurring in part and dissenting in part). As a *Hurst*-compliant penalty phase allowed the death penalty to remain a sentencing option, so too would remanding for a new sentencing proceeding that complies with *Apprendi*/*Blakely* fulfill the Legislature's intent for the nonstate prison sanction reflected in subsection (10).

In addition to curing the constitutional infirmity in subsection (10) and being consistent with the approach we have taken in the death penalty context, remanding for a jury to make the dangerousness finding under subsection (10) best protects the due process rights of defendants while complying with the de novo nature of resentencing proceedings. This Court has held that "[i]n both capital and noncapital cases, . . . resentencing is a new proceeding" and that " 'resentencing

- 8 -

entitles the defendant to a de novo sentencing hearing with the full array of due process rights.' " *State v. Collins*, 985 So. 2d 985, 989 (Fla. 2008) (quoting *Trotter v. State*, 825 So. 2d 362, 367-68 (Fla. 2002)); *see also Galindez v. State*, 955 So. 2d 517, 526 (Fla. 2007) (Cantero, J., specially concurring) (explaining that without the empaneling of new juries, a resentencing court would be limited to the facts found by the original jury and the State would, in effect, be harmed by its reliance on the law at the time—that sentence-enhancing facts could be found by the judge).

We recognize that the remedy of remanding to empanel a jury implicates separation of powers to the extent subsection (10) does not expressly require a jury finding of dangerousness. *See* art. II, § 3, Fla. Const.; *see also Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) (explaining that "a statutory criminal sentencing scheme, such as the [Criminal Punishment] Code, is substantive in nature because it is a product of legislative policy" and therefore within the province of the Legislature). However, the Florida Constitution provides that "[t]he judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts." Art. V, § 1, Fla. Const. "When confronted with new constitutional problems to which the Legislature has not yet responded, we have the inherent authority to fashion remedies." *Galindez*, 955 So. 2d at 527 (Fla. 2004) (Cantero, J., specially concurring) (citing *In re Order on Prosecution of Criminal Appeals by*

*Tenth Judicial Circuit Pub. Defender*, 561 So. 2d 1130, 1133 (Fla. 1990)); *see also State v. Rodriguez*, 575 So. 2d 1262, 1266 (Fla. 1991) (imposing a bifurcated trial requirement to a felony DUI statute in order to protect the due process rights of defendants). Mindful that this power should be invoked "only in situations of clear necessity" and not lead courts "to invade areas of responsibility confided to the other two branches," *Rose v. Palm Beach Cty.*, 361 So. 2d 135, 138 (Fla. 1978), we hold that the proper remedy for harmful error resulting from the court, not the jury, finding the fact of dangerousness under section 775.082(10) is to remand for resentencing with instructions to empanel a jury to make such a determination, if the State seeks that finding in the defendant's case. This remedy is the least intrusive remedy to both safeguard defendants' Sixth Amendment rights and effectuate the Legislature's clear purpose in enacting subsection (10).

## CONCLUSION

Because remanding for a jury to make the dangerousness determination cures the constitutional infirmity, is consistent with how we have treated *Hurst* resentencing proceedings, protects the due process rights of defendants, complies with the de novo nature of sentencing proceedings, and fulfills the Legislature's clear purpose in subsection (10) to require nonstate prison sanctions for certain low-scoring offenders where those sentences would not endanger the public, we

- 10 -

quash the First District's decision to the extent that it chose statutory revival as the proper remedy[4] and remand for further proceedings consistent with this opinion.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

　　First District - Case No. 1D17-3335

　　(Alachua County)

Andy Thomas, Public Defender, and Megan Long, Assistant Public Defender, Second Judicial Circuit, Tallahasee, Florida,

　　for Petitioner

Ashley Moody, Attorney General, and Quentin Humphrey, Assistant Attorney General, Tallahassee, Florida,

　　for Respondent

---

4.  We disapprove the First District's decision in *Booker* for the same reason.

- 11 -