DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHRISTOPHER TAVARIS DEAN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2406

[April 8, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 50-2005-CF-004089-AXXX-MB.

Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, Melanie Dale Surber, Senior Assistant Attorney General, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

The primary issue before this court is whether Christopher Tavaris Dean was entitled to de novo resentencing, following the Florida Supreme Court's unequivocal remand and instructions to this court which we in turn passed on and remanded to the trial court—also with unequivocal instructions. We agree with Dean that he was deprived of the "clean slate" resentencing hearing to which he was entitled, and we reverse and remand for yet another sentencing hearing.

As a reminder to all parties, this is what the Florida Supreme Court determined and directed we do:

> We quash the Fourth District's holding regarding Dean's PRR sentences and remand for resentencing because his designation as a PRR is not supported by the evidence in the record in this case. See Davenport v. State, 971 So. 2d 293, 295 (Fla. 4th DCA 2008) ("It is permissible for a trial court to

take judicial notice of its own files, but the trial judge has to put such evidence in the record of each case when sentencing a defendant as an HFO and PRR."), rev. denied, 993 So. 2d 511 (Fla. 2008). On remand, the State may present evidence to prove that Dean meets the statutory requirements to be sentenced as a PRR. See Ward v. State, 11 So. 3d 459, 459 (Fla. 3d DCA 2009); see also State v. Collins, 985 So. 2d 985, 990 (Fla. 2008) ("[B]ecause a resentencing is a new proceeding, the State may present additional evidence on remand to prove the defendant qualifies for habitual felony offender sentencing.")[.]

. . . .

. . . [W]e quash the Fourth District's holding regarding Dean's PRR sentences and remand for resentencing.

*Dean v. State*, 230 So. 3d 420, 424-25 (Fla. 2017) (footnote omitted).

Of particular importance is the Florida Supreme Court's specific cite to *State v. Collins* in which, in pertinent part, the court held:

In noncapital cases, too, we have concluded that "resentencing entitles the defendant to a de novo sentencing hearing with the full array of due process rights." *Trotter v. State*, 825 So. 2d 362, 367-68 (Fla. 2002); *see also Galindez v. State*, 955 So. 2d 517, 525 (Fla. 2007) (Cantero, J., specially concurring) ("We have consistently held that resentencing proceedings must be a 'clean slate,' meaning that the defendant's vacated sentence becomes a 'nullity' and his 'resentencing should proceed de novo on all issues bearing on the proper sentence.'" (citation omitted)); *Walker* [*v. State*, 988 So. 2d 6, 8 (Fla. 2d DCA 2007)] (Altenbernd, J., concurring specially) ("Generally, courts have held that once a defendant successfully challenges his sentence on appeal and the cause is remanded for resentencing, the resentencing is a 'de novo' proceeding, at which either side may present evidence anew regarding the appropriate sentence.").

The principle of de novo sentencing often *benefits* the defendant. *See, e.g., Galindez*, 955 So. 2d at 525 (Cantero, J., specially concurring) ("In fact, because resentencing is de novo, the State was *required* to produce evidence on sentencing issues even if the State established the fact at the

2

original sentencing."); *Tubwell v. State*, 922 So. 2d 378, 379 (Fla. 1st DCA 2006) ("As this resentencing proceeding was de novo, the state was not relieved of its burden to prove the prior offenses." (citations omitted)); *Rich v. State*, 814 So. 2d 1207, 1208 (Fla. 4th DCA 2002) (holding that because resentencing following reversal is a new proceeding, the State must introduce evidence that the defendant qualifies for enhanced sentencing, even though such evidence was introduced in the previous sentencing hearing); *Mills v. State*, 724 So. 2d 173, 174 (Fla. 4th DCA 1998) (holding that even though the defendant did not challenge his prior convictions at the original sentencing, law-of-the-case principles do not insulate the State from proving them at resentencing); *Baldwin v. State*, 700 So. 2d 95, 96 (Fla. 2d DCA 1997) (agreeing that because resentencing is a new proceeding, the defendant may challenge the accuracy of prior convictions included on his scoresheet, even though he did not challenge them at the original sentencing).

We have also recognized that because a resentencing is a new proceeding, the court is not limited by the evidence originally presented. *See Lucas v. State*, 841 So. 2d 380, 387 (Fla. 2003) ("[A] resentencing court is not limited by evidence presented (or not presented) in . . . the original . . . sentencing phase."); *Mann v. State*, 453 So. 2d 784, 786 (Fla. 1984) (recognizing that where a remand directs a new sentencing proceeding, both sides may present additional evidence).

*Collins*, 985 So. 2d at 989 (alterations in original) (emphasis in original).

Despite the fact that Dean was permitted to present evidence at the hearing, statements made by the trial court and the prosecutor at the hearing patently evidence their belief that the only purpose of remand was to introduce evidence that Dean qualified as a Prison Releasee Reoffender. We encountered a similar situation in *Davis v. State*, 227 So. 3d 137, 138 (Fla. 4th DCA 2017). In an earlier opinion, Davis's previous sentence was reversed and remanded for resentencing. *Id.* At resentencing, the trial court announced that it had read everything submitted to it, including Davis's sentencing memorandum, letters from Davis's family and friends, and certificates from the programs he completed while incarcerated. *Id.* The parties were permitted to present their desired evidence and arguments. *Id.* However, in pronouncing sentence the trial court indicated that it was not inclined to "revisit" the sentence of the predecessor judge or consider new evidence regarding Davis's behavior in

prison, and again imposed a life sentence. *Id.* at 138-39. This court reversed on the basis that Davis was not afforded the full panoply of due process considerations when he was resentenced:

> From our review of the record, we are satisfied that the trial court, upon resentencing, afforded Davis due process by reviewing in advance all materials submitted by the defense for the resentencing hearing and allowing him to present any evidence and arguments he wanted. We note that Davis makes no issue on appeal regarding whether the successor judge was sufficiently familiar with the facts of the case, the trial, or the prior sentencing proceeding.
>
> However, the statements by the successor judge during the hearing lead us to conclude that the trial court did not proceed on a "clean slate" on resentencing and intentionally decided it was not going to evaluate the same evidence submitted at trial and the initial sentencing hearing, together with the new evidence, which included information about Davis's performance in prison. The trial court acknowledged it was "permitted," by our remand instructions, to go through an evaluation process and change the length of the initial sentence, but announced "I am not going to revisit that," referring to the prior sentence, and "I am not prepared to do that," referring to consideration of Davis's performance while in prison. Thus, although the trial court afforded substantial due process to Davis on resentencing, it failed to afford the full panoply of due process, to which he was entitled.

*Id.* at 139-40.

As in *Davis*, Dean was permitted to present mitigating evidence, but the trial court's statements clearly indicate that it was not proceeding as if this was a "clean slate":

> [THE STATE]: [T]he sentence has always been affirmed; . . . it was remanded for the state to *prove up the documentation of the PRR.*
>
> . . . .
>
> THE COURT: But isn't the issue here today -- and I agree with you; I believe Mr. Dean is extremely remorseful -- but -- and correct me if I'm wrong -- it was reversed for

4

the state to present evidence to see whether or not he qualified as a prison releasee reoffender, correct?

[THE STATE]: That is correct . . . .

THE COURT: . . . [T]his is just, you know, *going through the machinations of the state getting the paperwork in order*, none of the appellate courts . . . reversed the underlying convictions, correct?

. . . .

And the *sole purpose* of the remand was to rightly or wrongly *give the state an opportunity to prove the PRR status*; if he is PRR then it's still a mandatory sentence, correct?

. . . .

[THE STATE]: That is correct.

(Emphasis added.) Because the trial court and state clearly expressed that the hearing's purpose was for "documentation of the PRR" and "the state getting the paperwork in order," it is apparent that Dean did not receive a de novo sentencing hearing. Thus, as in *Davis*, "although the trial court afforded substantial due process to" Dean by allowing him to present evidence, "it failed to afford the full panoply of due process, to which he was entitled." *See Davis*, 227 So. 3d at 140.

A major distinguishing factor between this case and *Davis* is that the trial court in *Davis* was not statutorily required to impose a specific sentence. By contrast, the trial court in this case was bound to impose the PRR sentence that Dean received. One might be tempted to conclude that this renders the error "harmless." But because Dean was deprived of the full panoply of due process, the harmless error analysis does not apply. *See Jackson v. State*, 880 So. 2d 1241, 1243 (Fla. 1st DCA 2004) ("Because the deprivation of the right to due process constitutes fundamental error, a harmless error review is not appropriate.").

Relying on the trial judge's reasoning below, the dissent concludes that the sentence should be affirmed in that Dean was allowed to present evidence, because a PRR sentence is "proper," because the defendant's objective is to convince the state not to seek PRR sentencing on remand, and because the record already reflects "the State's intention to exercise

5

its discretion to pursue a PRR sentence." As accurate as these observations may be, respectfully, that is not the issue before us: When Dean was denied a de novo sentencing hearing, he was denied due process.[1] To limit the analysis to the propriety of the end result or the likelihood of imposition of an identical sentence on remand is akin to a harmless error analysis, which is not applicable here.[2]

Although the dissent accurately sets forth an excellent summary of the forty-nine minute, forty-one page transcript of the full sentencing hearing, it matters not—because the trial court irrevocably tainted the process. Based on the trial court's own words, there was never a chance that Dean would receive the "clean slate" sentencing hearing to which he was entitled and which both the Florida Supreme Court and this court ordered.

Accordingly, we once again remand this matter to the trial court for a "clean slate" resentencing of the appellant with the full panoply of existing procedural protections. So we are entirely clear, "resentencing should proceed *de novo* on all issues bearing on the proper sentence," *Collins*, 985 So. 2d at 989 (citation omitted), which means that the state should determine whether to seek PRR sentencing, not merely "prove up" PRR qualification, *see generally* § 775.082(9)(d)1., Fla. Stat., and that if the state elects to pursue a PRR sentence, the state must introduce evidence supporting a PRR sentence, regardless of whether such evidence was introduced at a prior hearing, *see Collins*, 985 So. 2d at 989. Furthermore, the "full panoply" of procedural protections includes "any new constitutional protections that have been recognized since the defendant's

---

[1] *See Davis*, 227 So. 3d at 140 (Ciklin, J., specially concurring) ("I agree with the dissent's suggestion that the defendant's original sentence may very well have been 'entirely appropriate for the crime appellant committed, given his criminal history.' But, respectfully, that notion misses the point of the majority opinion: A unanimous three-judge panel of this court ordered that the original sentence be vacated and that Davis be resentenced with the commensurate panoply of due process rights.").

[2] Additionally, we must note and disagree with the dissent's conclusion that everyone "was on the same page." Although *co-counsel* for the defense indicated agreement with the trial court's conclusion that the purpose of the hearing was "going through the machinations of the state getting the paperwork in order" as well as its accurate statement that the PRR sentence was mandatory, Dean's other attorney asserted that "we are here for a de novo sentencing; it's not just to perfect the PRR, prove up part of it . . . ." Moreover, this conclusion is belied by the facts that Dean presented evidence at the hearing and that, prior to the hearing, he filed a substantive motion to preclude the imposition of a life sentence.

original sentencing." *See Davis*, 227 So. 3d at 139 (quoting *Galindez*, 955 So. 2d at 525-26 (Cantero, J., specially concurring)).

*Reversed and remanded with instructions.*

MAY, J., concurs.
GERBER, J., dissents with opinion.

GERBER, J., dissenting.

I respectfully dissent.

The defense filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion raising the exact argument which the defense has raised in this appeal – that certain statements made at the resentencing hearing indicate the state's and the trial court's belief that the only purpose on remand was to introduce evidence proving the defendant qualified as a prison releasee reoffender (PRR), thus depriving the defendant of his due process right to a "clean slate" de novo resentencing hearing.

However, after considering that argument, the trial court entered an order denying the defense's rule 3.800(b)(2) motion. In the order, the trial court properly recognized it held a de novo sentencing hearing at which the state exercised *its discretion* to pursue a PRR mandatory life sentence.

## A. *The Trial Court's Well-Reasoned Order*

I adopt the trial court's well-reasoned order, which relies on the complete record, not on isolated statements out of context from the resentencing hearing:

> In Defendant's Motion to Correct Sentencing Error, Defendant asserts that this Court's August 9, 2018 resentencing hearing was not conducted in accordance with the Florida Supreme Court's directive. Defendant argues that while the Florida Supreme Court remanded the case for a *de novo* resentencing hearing, the parties and the Court were under the "misconception" that the resentencing hearing was solely for the purpose of determining whether Defendant qualified as a PRR. Specifically, Defendant alleges that the State was under the misimpression that it was required to seek PRR sentencing on remand, and that as a result, the Court should set aside Defendant' s sentence and order a new sentencing hearing. The Court disagrees.

7

Defendant was convicted of Second Degree Felony Murder on Count 1 and Burglary on Count 2. Normally, second degree felony murder is a first-degree felony punishable by a term of years not exceeding life, § 782.04(3), Fla. Stat. (2004), and burglary (as committed in this case) is a second-degree felony punishable by a maximum sentence of fifteen years, § 810.02(3), Fla. Stat. (2004). However, because Defendant was found to qualify as a PRR, Defendant's sentences of life on Count 1 and fifteen (15) years on Count 2 were mandatory. § 775.075(9)(a), Fla. Stat. (2004).

As noted above, the Florida Supreme Court remanded this case because at Defendant's February 7, 2014 resentencing hearing, the State failed to supply sufficient documentary evidence supporting Defendant's PRR designation. *Dean,* 230 So. 3d at 424-25. Instead, as the Florida Supreme Court determined, this Court improperly relied upon the transcript of Defendant's original December 18, 2008 sentencing hearing at which the proper documentary evidence supporting a PRR designation was supplied. *Id.*

Defendant correctly argues that on remand, the State had the discretion as to whether to seek PRR sentencing again. Section 775.082(9)(a)3. provides that if a state attorney determines a defendant qualifies for PRR sentencing, "the state attorney *may* seek to have the court sentence the defendant as a prison releasee reoffender," (emphasis added), and Florida's courts have repeatedly held that the discretion to seek PRR sentencing lies solely with the state attorney. *See, e.g., State v. Cotton,* 769 So. 2d 345, 348-49 (Fla. 2000); *State v. Smith,* 832 So. 2d 249, 251 (Fla. 5th DCA 2002); *Phillips v. State,* 834 So. 2d 272, 274 (Fla. 5th DCA 2002). Further, as noted by the Florida Supreme Court in *State v. Collins,* 985 So. 2d 985, 989 (Fla. 2008), remanding for resentencing creates a new proceeding. *See also Lucas v. State,* 841 So. 2d 380, 387 (Fla. 2003) ("[A] resentencing court is not limited by evidence presented (or not presented) in ... the original ... sentencing phase."); *Mann v. State,* 453 So. 2d 784, 786 (Fla. 1984) (recognizing that a remand for new sentencing proceeding is not limited to a "reweighing"; both sides may present additional evidence). Thus, in the present case, no error occurred where the Court allowed the defense to call witnesses on Defendant's behalf and the State to submit

Supplemental Discovery (DE #666) to support designating Defendant a PRR.

However, insofar as Defendant asserts the State was under the "misconception" that it was *required* to seek PRR sentencing on remand, the Court finds Defendant's claim is refuted by the record. On July 10, 2018, the State filed separately a Notice to Take Judicial Notice of Records Under Seal (DE #678) and Notice of Defendant's Qualification as a PRR and the State's Intention to Seek Maximum Statutory Penalty (DE #679) in preparation for Defendant's August 9, 2018 resentencing hearing. (Ex. "B," Notice to Take Judicial Notice and Notice of Defendant's PRR Qualification). Such filings are indicative of the State's intention to exercise its discretion to pursue a PRR sentence. Moreover, <u>during the resentencing hearing, defense counsel informed the Court that it had attempted "for quite some time" to persuade the State to exercise its discretion by not seeking PRR sentencing, but that "the state is very powerful in their authority to exercise their discretion and they have chosen not to exercise that ...."</u> (Ex. "A," Sentencing Hr'g Tr. 23:15-18.) Therefore, the Court finds that the State did, in fact, exercise its sole discretion by choosing to pursue a PRR designation and sentence at Defendant's August 8, 2019 resentencing. Further, once the Court found that the State's evidence proved that Defendant qualified as a PRR, the Court was obligated to find Defendant a PRR and to sentence Defendant to a term of life on Count 1 and fifteen years on Count 2, which is exactly what the Court did. *See Smith*, 832 So. 2d at 250 ("once [the State] proves that a defendant is qualified under the PRR Act, the trial court has no discretion ....").

(italics in original; underlining added).

## B. *The Complete Record Supports the Trial Court's Order*

I see no due process violation in this record. Again, the complete record is controlling. I summarize the <u>forty-nine minute, forty-one page transcript of the full sentencing hearing</u> as follows:

- The trial court, the defense, and the state began by discussing why the case had been remanded for a new sentencing hearing. The trial court began by stating, "We are here for the new sentencing?" The defense responded, "Yes." The state

9

responded, "actually the sentence has always been affirmed; the Supreme Court reversed it in the last -- just as to the issue of the court each time had declared the defendant a PRR offender and sentenced to the mandatory life and then -- the Supreme Court said as to that this is reversed for the state because the document -- there was no documentation in the file; it was remanded for the state to prove up the documentation of the PRR." The defense replied, "we agree; it's essentially there was no evidence of PRR that was in the record and that's why we're back." (T. 3-4; R. 3819-20) (emphasis added).

- The state presented its witness and eleven exhibits to verify the defendant's PRR qualifications. The defense chose not to cross-examine that witness, and did not object to any of the state's eleven exhibits. (T. 5-17; R. 3821-33).

- The defense asked how the trial court wished to proceed. The trial court responded, "Whatever you want to present." (emphasis added). (T. 18; R. 3834).

- The defense objected to one aspect of the scoresheet's points assessment. After hearing the state's response, the trial court overruled the defense's objection. The state rested. (T. 18-19; R. 3834-35).

- The defense stated, "We'd like to put on some evidence." The state did not object, and the trial court responded, "Sure." (T. 19; R. 3835.) (emphasis added).

- The defense began by stating, "[W]e are here for a de novo sentencing; it's not just to perfect the PRR; prove up part of it, but it is a de novo sentencing hearing here today." The state did not object at this point, nor did the trial court say anything to contradict the defense's statement. (T. 20; R. 3836).

- After the defense continued arguing its position instead of presenting evidence as previously indicated, the state objected, but merely to say, "I think we've moved on to argument and I would object to argument as opposed to presenting evidence . . . otherwise I do have argument also." The trial court interjected, "I'm going to give everybody the opportunity to tell me anything they want to tell me, but I don't know if this is sort of like a little preamble to your evidence?" The defense responded, "Just a little

10

– it's a preamble I suppose, Judge." The trial court replied, "Okay, but <u>the state will have an opportunity to tell me anything, present anything, argue anything *as for the defense*</u>." (emphases added). (T. 20-21; R. 3836-37).

- The defense proceeded to recount the case's sentencing history: "[The first sentencing court] said that this case presented the strangest facts and circumstances that he had witnessed in his 28 years as a lawyer and that, 'It's very unfortunate that [the defendant] ended up in this tragedy; which I think is a tragedy for all sides, but I had no choice in the sentence unfortunately.' <u>And then we have the . . . added interesting aspect of when this case was remanded for a second trial by the Fourth District Court of Appeals [sic]; the Fourth remanded it not just for a new trial but -- or plea negotiations is the term that they used twice in their opinion, which is a rarity I think when we look at the opinions that come out . . . from the Fourth.</u> And now strangely we are here just back for the sentencing [from the Florida Supreme Court] . . . there was the issue with this manslaughter instruction but [a partial concurring opinion] said that that was a pyrrhic victory for him, that he had won that legal issue but it does not get him a new trial, and so we're here for the sentencing." (T. 21-22; R. 3837-3838).

- The defense continued, "[W]e were pursuing this other option for quite some time -- is that <u>[Florida] Statute 775.082(9)(a)3[.] does allow the state to abandon seeking PRR in certain extenuating circumstances including when the victim's recommendation is that the offender not be sentenced at PRR, and that was made abundantly clear in multiple ways that -- of how the victim was feeling about this case, but the state is very powerful in their authority to exercise their discretion and they have chosen not to exercise that</u>, and so here we are with [the defendant] facing a mandatory life sentence without the possibility of parole. . . . The issue is -- with the Eighth Amendment is that whether [the defendant] is remorseful or whether he is redeemable or . . . <u>whether the opinion of the family or the opinion of the public differs from that of a mandatory life sentence being a punishment that fits the crime.</u> These are things that unfortunately the PRR statute does not allow room for, and <u>I will be frank with Your Honor that the precedent of course is not on [the defendant's] side</u>." (T. 23-24; R. 3839-40) (emphasis added).

- The defense requested to present two exhibits to show why the defendant did not deserve a life sentence. The first exhibit was a Department of Corrections' certificate of some sort (which is not contained in the record). The second exhibit was a nine-minute documentary video which the defense prepared "in our efforts to have the state exercise [its] discretion with hopefully maybe not pursuing [a PRR life sentence]." (T. 25-26; R. 3841-42) (emphasis added). The state did not object to either exhibit, and the trial court admitted both exhibits into evidence. (T. 26; R. 3842).

- The defense played the nine-minute documentary video. The video featured statements from family members describing, among other things: the defendant's father was killed two months before he was born "so you think about a child [like the defendant] that never had a father"; growing up, he followed around one of his brothers on the streets, "like the criminals, he wanted to try to be like me"; after the crime, he "was not out there professing his innocence . . . he was just unwilling to accept the fact that he could possibly be criminally responsible for the death of [the defendant's accomplice]"; his trial counsel "was [the] more interested [person] in taking this case to trial . . . [the defendant] would have preferred resolving it"; after thirteen years in prison, he has "a good head on his shoulders"; although he missed being with his children while they grew up, he "always said that school comes first . . . because he want to see us succeed in everything that we do" and "[e]ven though he's like been gone for a while he still like tries to stay in my life the best way he can"; he "is missing out on moments that he shouldn't miss out on"; "he has paid his dues to society for what he's done and he's had a lot of time to think about it and we hope -- he hopes that he would eventually . . . be able to live life outside of prison and have a chance at . . . being a productive member of society"; "[H]e's got a really good heart. If they really sit down and talk with [him] they will see . . . Just give him a second chance . . . just for his kids . . . so he can be with his kids in life."; "I hope that he comes out and just wants to just make up all of that time that he missed outside, have different objectives, good job and educate himself . . . have his own life outside of criminal stuff." (T. 27-35; R. 3843-3851).

- The defense had the defendant allocute before the trial court. The defendant first briefly recounted his upbringing. He then described his feelings about his accomplice who was killed in the aftermath of the crime. "My friend, my brother . . . was an

12

extremely good friend of mine, pretty much my brother in every aspect of the word; we shouldn't have been involved in this chain of events that unfortunately cost my brother his life.  I tried my best to save [him] from being (indiscernible) like he did.  The day that [he] died the old [me] died too on that same day also.  On that day everything -- aspect of my life have changed forever.  There are events that occur in a person's life sometimes that open up their eyes to appreciate every -- of how life is supposed to be.  For the past 13 years of my incarceration I have come to appreciate every person, individual person who have -- for who they are.  I am deeply in love with the [man who I am] -- being today; I promise everyone in this courtroom today that I will love to give -- be given another chance."  (T. 36-38 ; R. 3852-54).

- The defendant completed his allocution by thanking the accomplice's mother:  "[Y]ou along with my mother have been -- sincerely been like a hand from heaven. . . . Your unconditional support throughout this entire situation . . . you have lost a biological son . . . 13 years ago but I want you -- for you to know that the rest of my life I will never -- forever be -- I will ever forever be your son too."  (T. 38; R. 3854).

- The trial court asked, "<u>Anything else from the defense?</u>"  The defense responded, "<u>No, that's all.</u>"  (T. 38-39; R. 3854-55) (emphasis added).

- The trial court then heard closing argument before rendering the mandatory PRR life sentence.  That transcript portion is quoted here verbatim:

  [STATE]:  Just brief argument, Judge.  First of all, I just would like to point out that there's been a mixture of points being made here today.  I do appreciate that [the defendant] has turned his life around while he's been in custody and that's -- and I do think that that's genuine; mixing up with that is this continuous trying to blame [the burglary victim who killed the accomplice], which is inappropriate and contrary to the law.  For example, in the video just now playing that [the victim] is [driving] 100 miles an hour, that only meant that the defendant was going much faster than 100 miles an hour because [the burglary victim], everybody knows, couldn't catch him.  And with regard to how this is so different, it's not different.  There's second-degree

murder felony murder cases that happen every week in this courthouse; two guys go in to rob a 7-11, the clerk pulls his gun and kills one of them, we send those -- we send Defendant A to prison for life always and nobody blinks an eye, so this really isn't different at all. [The burglary victim] could have theoretically shot and killed [the accomplice] during the burglary . . . and [the defendant] would still be charged with second-degree felony murder. So I do think that there's a mixture of issues with regard to that because I do think [the defendant] has made a good --

THE COURT: But isn't the issue here today -- and I agree with you; I believe [the defendant] is extremely remorseful -- but -- and correct me if I'm wrong -- it was reversed for the state to present evidence to see whether or not he qualified as a prison releasee reoffender, correct?

[STATE]: That is correct, and basically under 775.082(d) it speaks of the legislative intent on the sentencing, and under 775.082(3) the defendant must be sentenced to the mandatory life and 15 --

THE COURT: And even in the Supreme Court opinion -- or maybe it was in the defense's motion when they said this is just, you know, going through the machinations of the state getting the paperwork in order, none of the appellate courts starting at the Fourth all the way up to the Supreme Court reversed the underlying convictions, correct?

[DEFENSE]: Correct.

THE COURT: And the sole purpose of the remand was to rightly or wrongly give the state an opportunity to prove the PRR status; if he is PRR then it's still a mandatory sentence, correct?

[DEFENSE]: Correct.

[STATE]: That is correct.

THE COURT: Okay. I didn't mean to cut you off but I wanted to make sure we were all on the same track.

14

[STATE]: No, that was my final point, was that the PRR statute has been proven here today and it is mandatory.

THE COURT: And the PRR statute was established under the exhibits that were all moved in without objection?

[STATE]: Yes.

THE COURT: Yes, sir?

[DEFENSE]: We really don't have anything to add. Judge, we obviously are objecting that it's a violation of the Eighth Amendment and we hope that one day that will be taken out and we'll see [the defendant] back here again. The only thing I would say to [the state] is we disagree about I guess factually what happened in some ways; but for [the burglary victim's] behavior nobody would have died -- not to say that he isn't a victim as well, he was, he is of the burglary, but in comparison to the robbery example where -- I mean that's just a much, much different situation, the victim in the robbery that no -- that takes no action to do anything other than to defend himself in that particular moment, and that's not what we had here and I think that's why [the first sentencing court] said what he said and the Fourth said what they said about plea negotiations, and unfortunately we couldn't agree on that before we came before you today.

THE COURT: All right. Well, is there anything else from anybody?

[STATE]: No, Your Honor.

THE COURT: Anything else from the defense?

[DEFENSE]: No.

THE COURT: All right, so based on the exhibits that were moved into evidence without objection then I do find that the defendant is a prison releasee reoffender and by statute it is a mandatory life sentence. The original sentence will stand.

(T. 39-43; R. 3855-59) (emphasis added).

15

Having presented a summary of, and then a verbatim portion of, the resentencing hearing, it is clear that everyone, including the defense, was on the same page. The defense did not challenge the state's PRR evidence. The defense was permitted to, and did, present all of its requested evidence and argument. The defense twice stated on the record that it had no further evidence or argument. The defense never raised a due process objection or claimed the trial court was not providing the defense with a de novo resentencing hearing or a full opportunity to be heard. Instead, the defense ultimately (and properly) conceded that once the state proved the defendant qualified as a PRR, the trial court had no choice but to impose a mandatory life sentence.

## C. *The Majority's Reliance on* Davis v. State *is Misplaced.*

The majority's reliance on *Davis v. State*, 227 So. 3d 137 (Fla. 4th DCA 2017), is misplaced. To make this point, a detailed summary of *Davis* is required.

Davis was sentenced as a habitual violent felony offender to life in prison with a minimum mandatory of fifteen years. *Id.* at 138. Davis later filed a motion to correct illegal sentences on the ground that he did not qualify as a habitual _violent_ felony offender. *Id.* The trial court denied the motion. *Id.* We reversed the trial court and remanded the case for resentencing with the following direction: "Although [Davis] does not qualify as an [habitual _violent_ felony offender], he may qualify as a habitual felony offender and those sanctions may be sought on remand." *Davis v. State*, 164 So.3d 96 (Fla. 4th DCA 2015) (emphasis added).

On remand, the state filed its notice of intent to seek an enhanced penalty for Davis as a habitual felony offender. 227 So. 3d at 138. Davis filed a sentencing memorandum, listing several mitigating factors, including letters from family and friends, and evidence of rehabilitation through programs while incarcerated. *Id.*

A resentencing hearing was held by a successor judge, because the judge who tried the case and imposed the original sentence was no longer on the bench. *Id.* At the beginning of the hearing, the successor judge stated he had read everything that was submitted, including Davis's sentencing memorandum, the letters from his family and friends, and his certificates for the programs which he completed while incarcerated. *Id.*

16

The parties stipulated that Davis qualified for sentencing as a habitual felony offender. *Id.* The successor judge then permitted both parties to present whatever evidence and arguments either desired. *Id.*

However, when pronouncing sentence, the successor judge indicated he was not inclined to "revisit" the sentence imposed by the judge who tried the case, or consider the new evidence regarding Davis's behavior while in prison. *Id.* Instead, the trial court simply determined Davis to be a habitual felony offender and sentenced him again to life in prison with the mandatory minimums. *Id.* at 138-39.

On appeal, Davis argued the successor judge's sentence was illegal because the successor judge, on remand, did not resentence him with the "full panoply of due process." *Id.* at 139. We agreed with Davis' argument, reasoning:

> From our review of the record, we are satisfied that the trial court, upon resentencing, afforded Davis due process by reviewing in advance all materials submitted by the defense for the resentencing hearing and allowing him to present any evidence and arguments he wanted. We note that Davis makes no issue on appeal regarding whether the successor judge was sufficiently familiar with the facts of the case, the trial, or the prior sentencing proceeding.
>
> However, the statements by the successor judge during the hearing lead us to conclude that the trial court did not proceed on a "clean slate" on resentencing and intentionally decided it was not going to evaluate the same evidence submitted at trial and the initial sentencing hearing, together with the new evidence, which included information about Davis's performance in prison. ***The [successor judge] acknowledged it was "permitted," by our remand instructions, to go through an evaluation process and <u>change the length of the initial sentence</u>, but announced "I am not going to revisit that," referring to the prior sentence, and "I am not prepared to do that," referring to consideration of Davis's performance while in prison. Thus, although the trial court afforded substantial due process to Davis on resentencing, it failed to afford the full panoply of due process, to which he was entitled.***

*Id.* at 139-40 (emphasis added).

As the majority here acknowledges, "a major distinguishing factor between this case and *Davis* is that the [successor judge] in *Davis* was not statutorily required to impose a specific sentence," whereas "the trial court in this case was bound to impose the PRR sentence that Dean received." Maj. Op. at 5 (emphasis added). However, the majority discounts that "major distinguishing factor" on the basis that the trial court's own words "irrevocably tainted the process," *id.* at 6, even though those words were wholly correct as a matter of law.

In my view, that "major distinguishing factor" is why this case should be affirmed. The successor judge in *Davis* was required by law to engage in an "independent assessment" of Davis's sentence because the successor judge had the ability to do so. 227 So. 3d at 140. Here, once the state proved the defendant was PRR-qualified, the trial court was required by law to sentence the defendant to life in prison. The trial court had no ability to conduct an "independent assessment" of anything except for whether the state proved the defendant was PRR-qualified. The state did so without challenge from the defense, and the trial court exercised the only power it had under the law.

### *Conclusion*

In sum, the due process violation which the defense's briefs now allege, and upon which the majority expressly relies, simply did not occur.

By leading the majority into concluding that a due process violation occurred, when the record plainly reveals otherwise as shown above, the defense has achieved what was undeniably its true goal – to set aside the defendant's PRR life sentence and obtain a fourth sentencing hearing in the hope that it can have yet another opportunity to convince the state to no longer seek a mandatory PRR life sentence.

I acknowledge that the defense, and perhaps others, may disagree with the state's decision to have sought a mandatory PRR life sentence under the facts of this case. In fact, in the transcript quoted above, the defense twice interpreted this court's precedent in the defendant's case as implying this court's disagreement. *See Dean v. State*, 124 So. 3d 997, 997 (Fla. 4th DCA 2013) (twice stating, "We grant the petition and remand for a new trial or plea negotiations.") (emphasis added). As the defense suggested, remand language implying that plea negotiations be employed is "a rarity I think when we look at the opinions that come out . . . from the Fourth."

However, regardless of whether any such disagreement exists or is justified, the state repeatedly has exercised its prosecutorial discretion to

18

seek a mandatory PRR life sentence, which is its prerogative. *See State v. Cotton*, 769 So. 2d 345, 351 (Fla. 2000) ("[A]bsent a compelling equal protection argument, the exercise of . . . prosecutorial discretion is not generally subject to judicial review.").

The state has once again exercised its prosecutorial discretion in this case, and the sentence was proper under the law. The trial court provided the defense with a de novo sentencing hearing, with the opportunity to present "[w]hatever you want" and "anything [you] want to tell me." The defense did so.

No due process violation occurred. Once the state proved the defendant qualified as a PRR, the trial court had no choice but to impose a mandatory life sentence. This is not a "harmless error" case. This is a "no error" case. We should affirm.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***